2012 UT 38

Nadine GILLMOR, Petitioner and Appellant,

v.

FAMILY LINK, LLC, David K. Richards, Barry Todd Miller, Joan Ellen Miller, Doug Carl Dohring, Laurie Ann Dohring, Kenneth W. Macey, and Robin A. Macey, Respondents and Appellees.

No. 20100120.

Supreme Court of Utah.

June 29, 2012.

30. *Id.* (internal quotation marks omitted).

31. *Id.* at 224.

Bruce R. Baird, Dallis A. Nordstrom, Salt Lake City, for appellant.

Keith W. Meade, Bradley M. Strassberg, Salt Lake City, for appellees, Family Link, LLC, Kenneth W. Macey, and Robin A. Macey.

Edwin C. Barnes, Salt Lake City, for appellees, Doug Carl Dohring and Laurie Ann Dohring.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 Petitioner Nadine Gillmor appeals the dismissal of her 2007 suit and the imposition of rule 11 sanctions against her attorney. The district court dismissed Ms. Gillmor's suit, holding that her highway-by-public-use and public condemnation claims were barred by the claim preclusion branch of res judicata. The district court also imposed sanctions against Ms. Gillmor's attorney under rule 11(b)(2) of the Utah Rules of Civil Procedure for bringing an unsupported claim. A majority of the Utah Court of Appeals affirmed. We hold that Ms. Gillmor's claims were not barred by res judicata. Therefore, we vacate the imposition of sanctions and remand for adjudication of Ms. Gillmor's suit on the merits.

## BACKGROUND

¶ 2 This dispute centers around two roads that run across land historically owned by the Richards family: the Perdue Creek Road and the Neil Creek Road. These roads connect Nadine Gillmor's land to the Weber County Highway.[1] The Richards family property has been subdivided and sold several times since the original dispute began. The Maceys, their company Family Link, and the remaining defendants (collectively, Defendants) currently own the land over which the two disputed roads run.

¶ 3 In 1984, Ms. Gillmor's now deceased husband, Frank Gillmor, brought an action against the Richards family, seeking access to the two roads connecting the Gillmor property to the Weber Canyon Highway. Specifically, Mr. Gillmor claimed a private easement in the roads or, alternatively, claimed an irrevocable license across the roads. The parties voluntarily dismissed the case with prejudice in 1985 when Mr. Gillmor and Mr. Richards entered into settlement agreement (Settlement Agreement or Agreement). The Agreement purported to give the Gillmors a limited private easement over the Perdue Creek Road and only limited access over the Neil Creek Road.

¶ 4 In 2001, Ms. Gillmor brought suit against the Maceys, who had acquired the Richards' land, seeking to interpret and enforce the terms of the 1985 Settlement Agreement. Specifically, Ms. Gillmor alleged that she and her children had private access to both roads under the Settlement Agreement. Following a bench trial, the district court entered extensive factual findings, which focused on the Gillmors' private use of the roads since Frank Gillmor's acquisition of the Gillmor property in 1969, the language of the Agreement granting the Gillmors a private easement in the roads, and the intent of Mr. Gillmor and Mr. Richards at the time they executed the Agreement. The district court held that the Agreement granted Ms. Gillmor a private easement over the Perdue Creek and Neil Creek Roads, but that this right did not extend beyond Mr. Gillmor's immediate family and invitees. The district court also held that the easement would run with the land. On appeal, the Utah Court of Appeals affirmed in part and reversed in part. The court of appeals held that the Agreement granted Ms. Gillmor a limited private easement over the roads, but that the easement did not run with the land and would not pass on to her children from a prior marriage because the Agreement limited access to those within "the first degree of consanguinity" with Frank Gillmor. *Gillmor v. Macey*, 2005 UT App 351, ¶ 21, 121 P.3d 57 (alteration omitted).

¶ 5 In 2007, Ms. Gillmor initiated the current litigation. Ms. Gillmor brought two claims for access over the Perdue Creek and Neil Creek Roads. First, Ms. Gillmor asserted that the roads were subject to condemnation for a public access easement under section 78-34-1(3) of the Utah Code.[2] Second, Ms. Gillmor asserted that the roads had been continuously used as public thoroughfares for a period of ten years, and were thus dedicated to public use as a "highway by use" under Utah Code section 72-5-104. Specifically, Ms. Gillmor's complaint alleged that the general public had used both of the disputed roads for at least ten years, that the roads are public thoroughfares, and that the prior landowners had not attempted to limit the public's use. The complaint further alleged that the roads "appear in various maps and surveys dating back to the 19th Century and were utilized by travelers on their way over the mountain including to and from bars, brothels, coal mines, farms and other businesses." The complaint also alleged that "[a]dditional evidence of the history and public use of this road exists in the form of 'sweet heart' carvings on the trees dating back to the 1950[s]."

¶ 6 Defendants moved to dismiss Ms. Gillmor's complaint based on the claim preclusion branch of res judicata and judicial estoppel grounds. Defendants also argued that Ms. Gillmor had no private right of condem-

---

1. There is some dispute as to whether the Gillmor property is landlocked. However, that dispute is not relevant to this case and we therefore do not address it.

2. This statute has since been renumbered as section 78B-6-501.

nation. The district court granted the motion based on res judicata, holding that the doctrine of claim preclusion barred both the highway-by-public-use and public condemnation claims (collectively, public highway claims). The court denied Defendants' motion to dismiss on the basis of judicial estoppel and declined to reach Defendants' argument that Ms. Gillmor had no private right of condemnation.

¶ 7 Defendants also requested sanctions against Ms. Gillmor and her attorney pursuant to rule of 11 of the Utah Rules of Civil Procedure.[3] The district court obliged, imposing sanctions on Ms. Gillmor's attorney under rule 11(b)(2) for filing a claim without a basis in law, but the court declined to impose sanctions against Ms. Gillmor under rule 11(b)(1) for filing a claim for an improper purpose. Ms. Gillmor appealed the dismissal of her complaint and the imposition of rule 11(b)(2) sanctions, and Defendants cross-appealed the district court's denial of sanctions under rule 11(b)(1). A majority of the Utah Court of Appeals affirmed the district court's decision. *Gillmor v. Family Link, LLC*, 2010 UT App 2, ¶¶ 21–22, 224 P.3d 741.

¶ 8 Ms. Gillmor filed a petition for certiorari, which we granted. We have jurisdiction under section 78A–3–102(3)(a) of the Utah Code.

## STANDARD OF REVIEW

■■■ ¶ 9 "On certiorari, we review the decision of the court of appeals for correctness, giving no deference to its conclusions of law." *Richards v. Brown*, 2012 UT 14, ¶ 12, 274 P.3d 911 (internal quotation marks omitted). Whether a claim is barred by res judicata is a question of law that we review

for correctness. *Allen v. Moyer*, 2011 UT 44, ¶ 5, 259 P.3d 1049. While we generally adopt a three-tiered approach for evaluating the imposition or denial of rule 11 sanctions, the ultimate conclusion as to whether rule 11 was violated is a legal conclusion that we review for correctness. *See Morse v. Packer*, 2000 UT 86, ¶¶ 16, 26, 15 P.3d 1021.

## ANALYSIS

### I. MS. GILLMOR'S PUBLIC HIGHWAY CLAIMS ARE NOT BARRED BY RES JUDICATA

■■■ ¶ 10 This case involves the claim preclusion branch of res judicata.[4] " 'Claim preclusion is premised on the principle that a controversy should be adjudicated only once.' " *Allen v. Moyer*, 2011 UT 44, ¶ 6 259 P.3d 1049 (quoting *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194). In determining whether res judicata bars a claim, we impose a three-part test:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Mack*, 2009 UT 47, ¶ 29, 221 P.3d 194 (internal quotation marks omitted). The second prong is often the most contested element of the claim preclusion analysis. *See, e.g., id.; Macris & Assocs., Inc. v. Neways, Inc.*, 2000 UT 93, ¶ 21, 16 P.3d 1214. And the second prong is the only one at issue in this case. The parties all agree that both cases involve the same parties and their privies and that the first suit resulted in a final judgment on the merits.[5] But the parties dispute whether

---

3. Rule 11 enables parties to request the imposition of sanctions on another party. UTAH R. CIV P. 11(c)(1)(A). Rule 11 authorizes sanctions against parties who file a complaint for "any improper purpose, such as to harass or to cause unnecessary delay" or any person who files a complaint in which "the claims ... are [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *Id.* 11(b)(1)-(2).

4. "The doctrine of res judicata embraces two distinct branches: claim preclusion and issue preclusion. Claim preclusion corresponds to causes of action; issue preclusion corresponds to the facts and issues underlying causes of action." *Mack v. Utah State Dep't of Commerce*, 2009 UT 47, ¶ 29, 221 P.3d 194 (alterations omitted) (citation omitted) (internal quotation marks omitted).

5. Ms. Gillmor contests the privity factor for the first time on appeal. Our appellate rules of procedure require that an appellant's brief contain a "citation to the record showing that the

Ms. Gillmor's public highway claims "could and should have been raised in the first action."

¶ 11 Both the district court and the court of appeals held that Ms. Gillmor's public highway claims could and should have been brought in either the 1984 or 2001 actions. *Gillmor v. Family Link, LLC*, 2010 UT App 2, ¶¶ 13, 21, 224 P.3d 741. The court of appeals noted Ms. Gillmor's concession that the public highway claims could have been raised previously and accordingly held that the claims should have been brought in the earlier cases. *Id.* ¶ 13. Defendants urge us to adopt the court of appeals' view. But Ms. Gillmor argues that even though the public use claims *could* have been brought in the prior litigation, it is not clear that she *should* have brought the claims. Specifically, Ms. Gillmor argues that she was not required to bring the claims in her prior suits because her current highway-by-public-use and public condemnation claims are legally and factually distinct from the private easement claims at issue in those prior suits. We agree with Ms. Gillmor.

¶ 12 In *Mack*, we discussed the evolution of our jurisprudence regarding the claim preclusion branch of res judicata. 2009 UT 47, ¶ 30, 221 P.3d 194. We noted that we had previously utilized a "state of facts" test to determine whether res judicata precluded a claim, but that "[m]ore recently . . . we have moved toward the transactional theory of claim preclusion espoused by the Restatement (Second) [of Judgments]." *Id.* Under the "state of facts" test, the "two causes of action are the same if they rest on the same 'state of facts,' and the evidence 'necessary to sustain the two causes of action' is of the same kind or character." *Id.* (quoting *Schaer v. State ex rel. Utah Dep't of Transp.*, 657 P.2d 1337, 1340 (Utah 1983)). Under the transactional test, the claims are the same if they "arise from the same operative facts, or in other words from the same transaction." *Id.*

¶ 13 Today, we fully embrace the Restatement's transactional test. Under this

formulation, "[r]ather than resting on the specific legal theory invoked, [claim preclusion] generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims." *Id.* (first alteration in original) (internal quotation marks omitted). Thus, the transactional theory contemplates a variety of considerations, including whether the underlying facts are related in time, space, origin, or motivation. RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982). In many ways, the Restatement's transactional theory relies, in part, on the underlying "state of facts" because it considers the facts and events giving rise to the legal claims. Therefore, our prior cases embracing the "state of facts" test remain good law to the extent that they are consistent with the Restatement's transactional test.

¶ 14 Under the transactional test, "[c]laims or causes of action are the same as those brought or that could have been brought in the first action if they arise from the same operative facts, or in other words from the same transaction." *Mack*, 2009 UT 47, ¶ 30, 221 P.3d 194. The phrase transaction or a series of transactions "connotes a natural grouping or common nucleus of operative facts." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b. Additionally, determinations of whether a certain factual grouping constitutes a transaction or series of transactions should be made "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* § 24(2). We recognize these considerations as a useful set of tools to aid courts in determining whether res judicata bars a claim. But we emphasize that "no single factor is determinative." *Id.* § 24 cmt. b. Therefore, every consideration need not be addressed or considered in every case.

issue was preserved in the trial court; or . . . a statement of grounds for seeking review of an issue not preserved." UTAH R.APP. P. 24(a)(5)(A)-

(B). Because Ms. Gillmor did not preserve this claim, we do not address it. *See, e.g., Donjuan v. McDermott*, 2011 UT 72, ¶¶ 20–22, 266 P.3d 839.

¶ 15 Our prior cases applying the doctrine of claim preclusion have often looked to similar considerations as those recognized in the Restatement's transactional test. For example, in *Schaer v. State ex rel. Utah Department of Transportation*, we held that res judicata did not apply because "[t]he two causes of action rest[ed] on a different state of facts and evidence of a different kind or character [was] necessary to sustain the two causes of action." 657 P.2d at 1340. We went on to note that "the evidence of the two causes of action relate[d] to the status of the property in two completely different and separate time periods." *Id.* Thus, *Schaer* considered the origin of the claims based on the underlying facts, the ease of trial convenience, and whether the facts underlying the claims were similar in time and space. While *Schaer* purported to adopt the "state of facts" test, *Schaer* is instructive because its pragmatic approach actually relied on many of the same factors adopted by the Restatement's transactional test.

¶ 16 The facts of *Schaer* are similar to those in the instant case. In *Schaer*, a landowner requested severance damages in a 1967 condemnation action, arguing that his remaining private property was effectively landlocked. *Id.* at 1338. The court agreed, holding that there was no reasonable access to the landowner's property and awarding him severance damages for his loss. *Id.* at 1338–39. More than ten years later, the landowner brought another claim regarding the same property, arguing that a road leading in and out of his property was a public thoroughfare. *Id.* at 1339. The State objected, arguing that res judicata precluded his claim because the trial court had previously determined in the original 1967 action that there was no reasonable access to the plaintiff's property and that the road at issue had been addressed in the initial action. *Id.* On appeal, we held that res judicata did not preclude the plaintiff landowner's public thoroughfare claim because "the evidence of the two causes of action relate[d] to the status of the property in two completely different and separate time periods." *Id.* at 1340. In other words, the two causes of action did not arise from the same nucleus of operative facts. Accordingly, we held that

claim preclusion did not bar the landowner's public thoroughfare claim. *Id.*

¶ 17 Similarly, in this case, Ms. Gillmor's 1984 and 2001 claims for a private easement did not arise from the same nucleus of operative facts as her current highway-by-public-use and public condemnation claims. The prior claims and the current claims involve a dispute regarding the same roads. However, there is no common nucleus of operative facts between the claims because, as in *Schaer*, "the two causes of action relate[ ] to the status of the property in two completely different and separate time periods." *Id.* In the 1984 and 2001 actions, the facts that gave rise to the Gillmors' private easement claim included Frank Gillmor's private use of the roads dating back to his acquisition of the Gillmor property in 1969, the allegation that the Gillmor property was landlocked, and the 1985 Settlement Agreement allowing the Gillmors private access to the roads. In contrast, Ms. Gillmor's complaint in this case alleges that the general public used the roads dating back to the 1800s, that the roads were public thoroughfares, and that none of the landowners attempted to limit their public use. Ms. Gillmor's complaint alleges that the roads "appear in various maps and surveys dating back to the 19th Century and were utilized by travelers on their way over the mountain including to and from bars, brothels, coal mines, farms and other businesses." She also alleges that "[a]dditional evidence of the history and public use of this road exists . . . dating back to the 1950[s]." Thus, while the highway-by-public-use and public condemnation claims could have been brought in the prior actions, the Gillmors were not required to bring the claims in the 1984 or 2001 suits because the underlying facts giving rise to the claims arise from actions of different parties in different periods of time.

¶ 18 Additionally, the prior private easement claims and the current public highway claims do not share a common origin. Ms. Gillmor's 1984 and 2001 private easement claims originated from the Gillmors' private use of the road, the landlocked nature

of the Gillmor property, and the resulting Settlement Agreement between the Gillmors and the Richards. In contrast, the current claims originate from over a hundred years of alleged public use by members of the public. The Gillmors' private use of the road, standing alone, would not be evidence of public use.[6] Thus, there is no common nucleus of operative facts between Ms. Gillmor's prior private easement claim and her current claim that the roads were public thoroughfares.

¶ 19 And the claims would not have formed a convenient trial unit. Ms. Gillmor's current public highway claims are legally and factually distinct from the claims advanced in the earlier suits. In an action for private easement, a party "must establish a use that is open, notorious, adverse, and continuous for at least twenty years." *Edgell v. Canning*, 1999 UT 21, ¶ 8, 976 P.2d 1193. But to establish that a highway has been abandoned to the public use, the party must show that "it has been continuously used as a public thoroughfare for a period of 10 years." UTAH CODE § 72–5–104(1)(a). Notably, Mr. and Ms. Gillmors' private use of the road subsequent to settlement of the 1984 claim would not be admissible to establish a claim of public use because "[i]ndividuals with a private right to use a road ... are not [considered] members of the public" for purposes of establishing a highway by public use. *Utah Cnty. v. Butler*, 2008 UT 12, ¶ 19, 179 P.3d 775 (internal quotation marks omitted). Thus, the prior private easement claims and current public highway claims do not form a convenient trial unit because there is no significant overlap in the facts, witnesses, or evidence necessary to establish them.

¶ 20 Defendants focus on the fact that the motivation underlying the two claims is the same, primarily that the Gillmors seek access to the road. The court of appeals found this argument persuasive, noting that "[a]ll three suits have had an identical motivation calculated to obtain a common goal: use of roads over the Richards property in order to more

easily access the Gillmor property." *Gillmor*, 2010 UT App 2, ¶ 13, 224 P.3d 741. We disagree. The motivations are actually distinct. The motive underlying the earlier suits was a desire for private, exclusive access to a private road. In contrast, the motive for the current suit is for a public right-of-way that is accessible to all members of the public with no right of exclusion. Moreover, while the motivation of the parties is a relevant factor, "no single factor is determinative" in determining whether a claim should have been brought. RESTATEMENT (SECOND) [OF JUDGMENTS] § 24 cmt. b.

¶ 21 Finally, it is important to take into account the reasonable expectations of the parties. While the Richards family and their successors may have believed that the legal dispute with the Gillmors had been resolved by the prior suits, they could not have reasonably expected that they would be immune from all public claims regarding these roads. Similarly, they could not have reasonably believed that all members of the general public, including the Gillmors, would be precluded from making a public claim to these roads.

¶ 22 Having considered these factors, we conclude that the doctrine of claim preclusion does not bar Ms. Gillmor's highway-by-public-use and public condemnation claims because they do not arise from the same common nucleus of operative facts as the prior private easement claims. The claims would not form a convenient trial unit because there is no significant overlap between the evidence necessary to establish the claims. Indeed, the relevant facts are distinct in both time and origin because Ms. Gillmor's current claims originate from public use of the roads dating back to the 1800s, while her prior private easement claims originated from Mr. Gillmor's need for access and his private use of the roads beginning in 1969. While both the prior and current claims focus on the same physical location, that alone does

---

**6.** "Individuals with a private right to use a road, such as adjoining property owners who may have documentary or prescriptive rights to use the road, are not [considered] members of the public [for purposes of establishing public use],

nor are those who have been given permission to use a road." *Utah Cnty. v. Butler*, 2008 UT 12, ¶ 19, 179 P.3d 775 (internal quotation marks omitted).

not compel a finding that claim preclusion bars the current claim.

¶ 23 We hold that Ms. Gillmor's claims in this suit do not arise from the same transaction as those brought in the 1984 and 2001 suits. While the current claims were factually available at the time of the prior suits, Ms. Gillmor was not required to bring them because they do not arise from the same common nucleus of operative facts. Therefore, res judicata does not bar Ms. Gillmor's claims.[7]

## II. RULE 11 SANCTIONS WERE NOT APPROPRIATE

¶ 24 Rule 11 permits the imposition of sanctions when an attorney fails to make a reasonable inquiry to ensure that the complaint is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." UTAH R. CIV. P. 11(b)(2), (c). The district court awarded sanctions against Ms. Gillmor's attorney under rule 11(b)(2) for filing claims that were barred by the doctrine of res judicata. Because we conclude that Ms. Gillmor's claims were not barred by res judicata, we have reversed the legal basis for the award of rule 11 sanctions. We accordingly vacate the district court's imposition of rule 11 sanctions.

## CONCLUSION

¶ 25 Ms. Gillmor's public highway claims are not barred by res judicata. We therefore reverse and remand for adjudication of Ms. Gillmor's claims on the merits and vacate the district court's imposition of rule 11 sanctions.

Justice PARRISH authored the opinion of the Court, in which Chief Justice

DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice LEE joined.

---

7. At oral argument, Defendants argued that Ms. Gillmor's highway-by-public-use claim may be moot because Summit County has since vacated any public interest it may have had in the Perdue Creek and Neil Creek Roads. Assuming this is true, Ms. Gillmor's highway-by-public-use claim may nevertheless present a live controversy because Ms. Gillmor alleges that a private party may assert a residual interest in a public road that has been vacated. And Defendants concede that Ms. Gillmor's other claim for public con-

demnation is not moot. We also note that Defendants never actually filed a suggestion of mootness. Rule 37 of the Rules of Appellate Procedure states that "[i]t is the duty of each party at all times during the course of an appeal or other proceeding to inform the court of any circumstances which have transpired subsequent to the filing of the appeal or other proceeding which render moot one or more of the issues raised." UTAH R.APP. P. 37(a).