2022 UT App 20

## THE UTAH COURT OF APPEALS

RASER TECHNOLOGIES INC., ET AL.,[1]
Appellants,
*v.*
MERRILL LYNCH, PIERCE, FENNER & SMITH INC., ET AL.,
Appellees.

Opinion
No. 20200941-CA
Filed February 17, 2022

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 150906718

John T. Anderson, L. Rich Humpherys, Karra J.
Porter, Paul T. Moxley, Patrick E. Johnson, James W.
Christian, and Alan M. Pollack, and Stephen
Quesenberry, Attorneys for Appellants

James S. Jardine, Mark W. Pugsley, Carol Ann Funk,
Richard C. Pepperman II, John G. McCarthy,
Andrew J. Frackman, and Abby F. Rudzin,
Attorneys for Appellees

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES DIANA HAGEN and RYAN D. TENNEY concurred.

MORTENSEN, Judge:

¶1    Raser Technologies Inc. (Raser) claims that the district
court erred when it determined Raser's racketeering claims
against Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill

---

1. The parties on appeal are not limited to those listed but also
include other parties whose names appear on the notice of
appeal or who have otherwise entered appearances in this court.

Lynch) were barred under the doctrine of res judicata based on a final judgment rendered by a Georgia court. Seeing no error in the district court's determination, we affirm.

BACKGROUND

¶2     Raser, a corporation with its principal place of business in Utah, sued Merrill Lynch in Georgia in 2012, alleging that Merrill Lynch violated Georgia's RICO and securities fraud statutes, as well as other statutory and common law claims. Raser's claims centered on the contention that Merrill Lynch had "substantially injured [Raser] while at the same time reaping enormous profits by knowingly and intentionally creating, loaning and selling unauthorized, fictitious and counterfeit shares of Raser stock[] through various unlawful schemes and devices." Raser asserted that Merrill Lynch's "unlawful conduct occurred within the context of [its] pervasive and long-standing pattern of naked short selling, which is an unlawful form of market manipulation."[2]

---

2. In short selling, "an investor, suspecting that the price of a stock will decrease, borrows the stock, sells it, waits for the price to decline, purchases the stock at the lower price, returns the stock to the lender, and pockets the difference in price as profit." *Raser Techs., Inc. v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 9, 449 P.3d 150 (cleaned up). A seller typically "has a three-day settlement period to deliver the stock to the buyer." *Id.* ¶ 10. While short selling is a lawful practice in many cases, it is unlawful when used to manipulate the stock price. *Id.* ¶ 9. In a "naked short sale," the investor neither owns nor has borrowed the stock sold, "thus creating phantom shares of the stock." *Id.* ¶ 10. When the shares cannot be delivered during the settlement period, a "failure to deliver" or "fail" is created. *Id.* (cleaned up). But because a system is in place to credit the shares to the buyer

(continued…)

¶3    The Georgia court granted Merrill Lynch's motion to dismiss the complaint in 2013. Six of Raser's claims were dismissed with prejudice. The remaining claims were dismissed without prejudice because they were improperly pled. Regarding the claims dismissed without prejudice, the court agreed with Merrill Lynch that under the principle of *lex loci delicti*,[3] the laws of Utah governed Raser's RICO claims. Accordingly, the court dismissed Raser's "remaining statutory claims . . . without prejudice," adding that Raser was "permitted to re-plead securities and RICO claims based on the laws [of Utah]." Raser unsuccessfully moved for reconsideration and

---

(…continued)

in spite of the failure to deliver, "an artificial oversupply of the stock" may result. *Id.* ¶ 12. "When the market is flooded with the chimerical shares, the stock price usually falls." *Id.* The U.S. Securities and Exchange Commission "heavily regulates naked short selling" by confining its legality "to limited circumstances." *Id.* Here, Raser alleges that Merrill Lynch's "trading practices ventured outside of these limited circumstances and into the realm of illegal activity." *See id.* For a more detailed background of the underlying dispute between Raser and Merrill Lynch, see *Raser Techs., Inc. v. Morgan Stanley & Co.*, 2019 UT 44, ¶¶ 1–20, 449 P.3d 150.

3. *Lex loci delicti* is the shortened form of the Latin phrase *lex loci delicti commissi*, which means "law of the place where the tort or other wrong was committed." *Lex loci*, Black's Law Dictionary (11th ed. 2019); *see also* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 541 (3d ed. 2011); *Risdon Enters., Inc. v. Colemill Enters., Inc.*, 324 S.E.2d 738, 740 (Ga. Ct. App. 1984) ("Under Georgia law, the lex loci delicti determines the substantive rights of the parties. . . . The general rule is that the place of wrong, the locus delicti, is the place where the injury sustained was suffered . . . ." (cleaned up)).

then appealed. The Georgia Court of Appeals affirmed the order. *See Raser Techs., Inc. v. Morgan Stanley & Co.*, 771 S.E.2d 517 (Ga. Ct. App. 2015).

¶4    Raser then took up the Georgia trial court's offer and amended its complaint to include two claims (UPUAA Claims) under, among other statutes, the Utah Pattern of Unlawful Activity Act. *See* Utah Code Ann. §§ 76-10-1601 to -1609. A few months later, Raser voluntarily dismissed these Utah-law-based claims without prejudice in Georgia.

¶5    In November 2015, Merrill Lynch filed a motion in Georgia for entry of final judgment against Raser. And in 2016, the Georgia court granted the motion. Raser did not object to entry of the final judgment in Georgia, nor did Raser appeal that judgment.

¶6    The same day that it voluntarily dismissed its claims in Georgia, Raser re-filed those claims in Utah state court. The district court granted Merrill Lynch's motion to dismiss the case for lack of personal jurisdiction. On appeal, our supreme court vacated the decision and remanded with instructions "to examine [Merrill Lynch's] contacts with Utah, assess the conspiracy theory of jurisdiction, and determine how [Raser's] claim relates to [Merrill Lynch] and Utah and to address, if necessary, [Merrill Lynch's] alternative arguments for dismissal." *Raser Techs., Inc. v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 88, 449 P.3d 150.

¶7    On remand, Raser requested leave to file an amended complaint to add parties, expand the facts, and modify its claims. Merrill Lynch opposed the amendment, arguing that it was futile because Raser's claims were barred by res judicata. The district court agreed that res judicata barred Raser's claims: "Because at least some claims arising out of these facts and circumstances were dismissed [by the Georgia court] with prejudice and on the merits, and this dismissal was affirmed on

appeal, all claims that could have been asserted are likewise barred by res judicata." The district court explained,

> [T]his court's ruling does not leave a plaintiff in these circumstances without a remedy. [Raser] had a remedy laid out before [it]. [Raser] could have litigated in Georgia—a forum [it] selected—the racketeering claims brought and then dismissed there. And if [Raser] had other claims under Utah law arising out of the same facts and circumstances, [it] could have sought leave to amend [its] Georgia complaint and, presumably, litigated those claims too. For reasons not explained, [Raser] chose not to finish litigating [its] claims in the place [it] selected to start litigating them, a forum that had made clear multiple times that it was more than willing to entertain those claims and whose subsequent rulings confirm the claims could have gone forward there.
>
> . . . .
>
> The doctrine of res judicata, and its application both to claims that were asserted *and could have been asserted*, ensures the orderly resolution of disputes by requiring parties to bring all claims arising out of a common set of facts in a single forum. Here, [Raser] selected that forum, Georgia, and then inexplicably abandoned it after losing on appeal. As a result, claims [it] could have asserted there cannot be asserted here.

Given its res judicata determination, the district court also denied Raser's motion to amend.

¶8 Raser moved for reconsideration, a motion which the district court denied, reiterating its earlier reasoning:

In dismissing the Georgia racketeering claim, the Georgia court invited [Raser] to file the *Utah* racketeering claim and [Raser] did so. The Georgia court never determined that the *Utah racketeering claim* was subject to dismissal on "technical" grounds. To the contrary, the Georgia court appeared ready, willing, and able to adjudicate the Utah racketeering claim right up until [Raser] voluntarily dismissed it and refiled here [in Utah].

. . . .

The Georgia court, upon dismissal of the Georgia racketeering claim, did *not* conclude that a Utah racketeering claim could not be heard there. It concluded the opposite. It invited the filing of the Utah racketeering claim, and [Raser] took the court up on that invitation.

Along with denying the motion for reconsideration, the district court granted Merrill Lynch's motion to dismiss all of Raser's claims against it. The court entered final judgment, and Raser appeals.

ISSUE AND STANDARDS OF REVIEW

¶9    The issue on appeal is whether the district court erred in concluding that Raser's claims were barred by the claim preclusion branch of res judicata and, consequently, denying Raser's motion for leave to amend as futile and granting Merrill Lynch's motion to dismiss. "Whether a claim is barred by res judicata is a question of law that we review for correctness." *Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 9, 284 P.3d 622. And a decision granting a motion to dismiss is reviewed for correctness. *Citizens for Responsible Transp. v. Draper City*, 2008 UT 43, ¶ 8, 190 P.3d 1245. "We review a denial of motions for

leave to amend under an abuse of discretion standard. But when the purported futility of the amendment justifies the denial of a motion to amend, we review for correctness." *Salt Lake City Corp. v. Kunz*, 2020 UT App 139, ¶ 16, 476 P.3d 989 (cleaned up).

ANALYSIS

¶10 The claim preclusion branch of the doctrine of res judicata applies when three elements are met:

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*Snyder v. Murray City Corp.*, 2003 UT 13, ¶ 34, 73 P.3d 325 (cleaned up). The claim preclusion branch of res judicata does not require that *every claim* be resolved on the merits but that *the suit* be resolved on the merits. *See id.* Thus, claim preclusion "prevents relitigation of claims that could and should have been litigated in the prior action but were not." *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d 873, 875 (Utah 1983). In other words, "when there has been an adjudication, it becomes res judicata as to those issues which were either tried and determined, or upon all issues which the party had a fair opportunity to present and have determined in the other proceeding." *Jacobsen v. Jacobsen*, 703 P.2d 303, 305 (Utah 1985) (cleaned up).

¶11 Here, with regard to the first element, there is no dispute that both the Utah and Georgia cases involved the same parties.

¶12 As to the second element, it is clear that the Georgia court was willing and able to hear Raser's UPUAA Claims—which "could and should have been raised in the first action." *See*

*Snyder*, 2003 UT 13, ¶ 34 (cleaned up). There was no purely technical ground, no procedural precondition, nor any jurisdictional bar that the Georgia court identified as preventing it from hearing the UPUAA Claims. And Raser points to none. Indeed, after Raser had amended its complaint to include the UPUAA Claims, there was no obstacle, procedural or otherwise, to the Georgia court hearing and adjudicating the case.

¶13   That the Georgia court never adjudicated the UPUAA Claims on the merits is of no import in the res judicata analysis. What matters is not that the UPUAA Claims were never adjudicated on the merits but that they "could and should have been raised in the [Georgia] action." *See id.* (cleaned up). Insofar as claim preclusion is concerned, the fact that the Georgia court dismissed six of Raser's claims with prejudice and on the merits means that any claims that could have been asserted with them are barred by claim preclusion upon entry of final judgment in the Georgia case. As our case law makes abundantly clear, this is simply the way claim preclusion works. *See Penrod*, 669 P.2d at 875 ("The [claim preclusion branch of res judicata] prevents relitigation of claims that could and should have been litigated in the prior action but were not."); *see also Bradshaw v. Kershaw*, 627 P.2d 528, 531 (Utah 1981) ("Res judicata means that neither of the parties can again litigate that claim, demand or cause of action or any issue, point or part thereof which he could have but failed to litigate in the former action." (cleaned up)); *Belliston v. Texaco, Inc.*, 521 P.2d 379, 380 (Utah 1974) ("If the parties have had an opportunity to present their case and judgment is rendered thereon, it is binding both as to those issues that were tried and to those that were triable in that proceeding, and they are precluded from further litigating the matter."); *Wheadon v. Pearson*, 376 P.2d 946, 947 (Utah 1962) (same).

¶14   Moreover, not only *could* the UPUAA Claims have been brought in Georgia, they *should* have been brought there. As the district court observed, the Georgia claims that were dismissed

arose out of the same "facts and circumstances" that supported the UPUAA Claims. Nowhere does Raser dispute that the "same operative facts," *see Gillmor v. Family Link, LLC*, 2012 UT 38, ¶ 14, 284 P.3d 622 (cleaned up), support both sets of claims. And because Raser "had a fair opportunity to present and have determined" the UPUAA Claims in the Georgia proceeding, it not only could have brought those claims, it also should have brought them in that proceeding, where the final judgment was ultimately entered. *See Jacobsen*, 703 P.2d at 305 (cleaned up).[4]

---

4. On appeal, insofar as Raser asserts that Georgia law should apply and that Georgia law on res judicata is materially different from Utah's, we disagree. Both are the same in regard to the preclusion of claims that could have been brought in a first action. In Georgia, "it is well established that the doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action." *Dove v. Ty Cobb Healthcare Sys., Inc.*, 729 S.E.2d 58, 61 (Ga. Ct. App. 2012) (cleaned up); *see also Mobley v. Sewell*, 487 S.E.2d 398, 400 (Ga. Ct. App. 1997) ("Res judicata prevents plaintiffs from asserting claims arising from the same transaction piecemeal or presenting only a portion of the grounds on which relief is sought and leaving the rest for a second suit if the first fails."); *Piedmont Cotton Mills, Inc. v. Woelper*, 498 S.E.2d 255, 256 (Ga. 1998) ("[I]t is only where the merits were not *and* could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were *or* could have been determined, then the defense is valid."); *accord Legacy Academy, Inc. v. Doles-Smith Enters., Inc.*, 812 S.E.2d 72, 78–79 (Ga. Ct. App. 2018); *Waldroup v. Greene County Hosp. Auth.*, 463 S.E.2d 5, 6 (Ga. 1995). Indeed, this principle is enshrined in Georgia statutory law: "A judgment of a court of

(continued…)

¶15    The only substantive dispute concerns the third element, namely, "whether there was a final judgment on the merits in the Georgia case." Raser contends on appeal that the Georgia court never "reached the merits" of the UPUAA Claims. Its argument is that the Georgia court "only provisionally dismissed [the Georgia RICO claims] without prejudice on the basis of a threshold procedural choice of law principle (*lex loci delicti*)" and later dismissed the UPUAA Claims only when Raser filed for its voluntary dismissal. Therefore, Raser argues, "the merits [of the UPUAA Claims] were never considered, let alone decided." From this perspective, Raser asserts that the Georgia court dismissed the UPUAA Claims on "purely technical grounds" based on Raser's "failure to satisfy a procedural precondition that the [UPUAA Claims] were to be informed by, and pursued under, the Utah racketeering and securities fraud statutes." (Cleaned up.)[5]

---

(…continued)

competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." Ga. Code Ann. § 9-12-40 (West 2021). Thus, whether we apply Utah or Georgia law matters not to our analysis. They are materially the same in this matter, and Raser loses under both states' laws.

5. The assertion that the Georgia court dismissed the UPUAA Claims on "purely technical grounds" is essential to Raser's argument. This importance is rooted in Georgia statutory law, which provides, "Where the merits were not and could not have been in question, a former recovery on purely technical grounds shall not be a bar to a subsequent action brought so as to avoid the objection fatal to the first. For a former judgment to be a bar

(continued…)

¶16    Raser's argument misses the mark by mischaracterizing the nature of the Georgia court's treatment of the UPUAA Claims. The Georgia court did not dismiss those claims on "purely technical grounds" for failure to satisfy a "procedural precondition." Rather, as the district court observed, "The Georgia court never determined that the *Utah racketeering claim* was subject to dismissal on 'technical' grounds. To the contrary, the Georgia court appeared ready, willing, and able to adjudicate the Utah racketeering claim right up until [Raser] voluntarily dismissed it and refiled here [in Utah]." In other words, the Georgia court never ruled that it lacked jurisdiction to hear the UPUAA Claims or that there was some "procedural precondition" that Raser had to satisfy before the court gained jurisdiction to hear those claims. Rather, the Georgia court determined that under the doctrine of *lex loci delicti*, Raser's RICO claims were governed by the law of Utah because Utah is where Raser allegedly sustained injury. Importantly, the Georgia court did not say that it *could not hear* the case because the law of Utah applied, but instead said that it *would need to apply* Utah

_____

(…continued)

to subsequent action, the merits of the case must have been adjudicated." *See* Ga. Code Ann. § 9-12-42 (West 2021). Raser asserts that the dismissal of the UPUAA Claims was "rooted in correctable procedural grounds short of the merits" that does "not preclude a subsequent action to remedy the threshold defect." But that is not what happened here. As we explain, Raser ignores the requirement identified in the first clause of the statute, which states that for a former adjudication not to have preclusive effect, the issue in a new action "could not have been in question." *See id.* Here, the UPUAA Claims clearly could and should have been adjudicated in the first action; so even if it is true that they were dismissed on "purely technical grounds," it is of no import here because they could and should have been brought in the Georgia action.

law to decide the case. To that end, the Georgia court explicitly permitted Raser to "re-plead within a reasonable time" its "RICO claims based on the laws" of Utah. And of course, the Georgia court always had jurisdiction because Raser freely elected to file its lawsuit in that court and Raser points to no other procedural impediments.

¶17   Raser apparently accepted the Georgia court's invitation, as evidenced by the filing of an amended complaint to include the UPUAA Claims. Moreover, it appears that the Georgia court was set to hear these claims until Raser voluntarily dismissed them. But voluntary dismissal does not somehow prevent the operation of res judicata. If voluntary dismissal had the effect of overcoming res judicata, then it would make the requirement of asserting claims that "could and should have been raised," *see Snyder*, 2003 UT 13, ¶ 34 (cleaned up), all but meaningless. Indeed, using "a voluntary dismissal without prejudice . . . as a mechanism for appealing an otherwise non-final order" is a strategy "not without its risks." *WDIS, LLC v. Hi-Country Estates Homeowners Ass'n*, 2019 UT 45, ¶ 21 n.12, 449 P.3d 171. "For example, under the doctrine of claim preclusion, an appellant who loses on appeal could be precluded from reasserting its voluntarily dismissed claims in another case." *Id.* Thus, we agree with the district court's observation:

> If a plaintiff is permitted to pull up stakes and abandon the jurisdiction where they start litigating a case after getting an unfavorable substantive ruling, then nothing would prevent parties from continually testing the waters in search of a more favorable forum. Nor would anything prevent litigating different claims arising from the same facts in different jurisdictions.

¶18   Borrowing the words of the district court, "under black letter principles of res judicata," the UPUAA Claims, which were

based on the same underlying facts as the Georgia claims, were barred from relitigation the moment the Georgia court entered final judgment on the Georgia claims. Simply put, the UPUAA Claims could and should have been raised in the Georgia action. Indeed, the Georgia court explicitly invited Raser to assert the UPUAA Claims in Georgia, and Raser initially accepted that invitation. But Raser elected to voluntarily dismiss the UPUAA Claims in Georgia and re-file them in Utah. And while Utah may well have presented a more favorable forum for Raser, the doctrine of res judicata precludes that option.

## CONCLUSION

¶19    We discern no error in the district court's determination that Raser's UPUAA Claims were barred by the doctrine of res judicata and, therefore, any amendment to its pleadings would have been futile. Affirmed.

————————