2020 UT App 139

## THE UTAH COURT OF APPEALS

SALT LAKE CITY CORPORATION, SALT LAKE CITY DEPARTMENT OF
AIRPORTS, AND TOOELE VALLEY AIRPORT,
Appellants and Cross-appellees,

*v.*

DICK D. KUNZ, DICK DARWIN KUNZ, BARBARA JEAN KUNZ, AND
NEIL NORRIS KUNZ,
Appellees and Cross-appellants.

Opinion
No. 20190010-CA
Filed October 16, 2020

Third District Court, Tooele Department
The Honorable Matthew Bates
No. 070301010

Jody K. Burnett and Robert C. Keller, Attorneys for
Appellants and Cross-appellees

Robert E. Mansfield and Megan E. Garrett, Attorneys
for Appellees and Cross-appellants

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

MORTENSEN, Judge:

¶1     This case offers a feast of legal issues—ranging from procedural to constitutional—but its main course is a cautionary tale to government entities: they must follow the exact statutory requirements for bringing a condemnation action under Utah Code section 78B-6-504(2)(c). Salt Lake City (the City) attempted to exercise its eminent domain power to obtain the air rights of

Appellees (Owners), in the form of an avigation easement,[1] connected with a runway on the south side of one of its airports, namely, the Tooele Valley Airport (TVA). After years of litigation, the district court dismissed the City's condemnation action because the City indisputably had failed to strictly comply with the requirements of Utah Code section 78B-6-504(2)(c). The City contends that the court erred in dismissing the action because (1) Owners made a binding admission that the City had complied with the statutory notice provision, (2) substantial compliance with the statutory requirements should have rescued the City from dismissal, and (3) the court should have allowed the City to amend its complaint. Owners dispute the merits of these contentions. They also raise their own contentions on cross-appeal, arguing that (1) the City has no power to condemn property situated outside its boundaries, (2) the City failed to negotiate as required by statute, (3) the district court erred in granting judgment as a matter of law to the City on valuation of the air rights, and (4) the district court erred in denying Owners an award of attorney fees and litigation costs.

¶2    In short, we affirm the district court's dismissal of this case based on the City's violation of the requirements of Utah Code section 78B-6-504(2)(c)—requirements we conclude demand strict compliance and for which prejudice need not be demonstrated. Because we do so, we decline to address Owners' contentions regarding negotiation and valuation as they may or may not be presented in any new proceeding. We do explain, however, why Owners' response to a statement of fact in an earlier partial summary judgment motion did not constitute an admission that was binding beyond the context of the then-

---

1. "An avigation easement [is] an easement permitting unimpeded aircraft flights over the servient estate." *County of Lenawee v. Wagley*, Nos. 302533, 302534, 302535, 302537, 302538, 2011 WL 6379321, at *1 n.1 (Mich. Ct. App. Dec. 20, 2011) (per curiam) (cleaned up); *accord Avigation Easement*, Black's Law Dictionary (11th ed. 2019).

pending motion, why the City was required to strictly follow the terms of the statute, and why the court did not abuse its discretion when it denied the City's request to amend its complaint. We also address why Owners are not entitled to an award of attorney fees and costs, and we answer an associated question of whether the City had extraterritorial eminent domain power in this case.

## BACKGROUND

### *The Three City Council Meetings*

¶3 The City acquired TVA—an airport located in Tooele County—in 1991. Owners[2] own the land directly south of TVA. In 2004, the City put together a plan to allow for an aircraft approach from the south using runway 35. As a condition of federal funding on this project, the City was required to assure the protection of open airspace on a defined slope extending downward to the runway, compatible with normal airport operations, including aircraft landing and takeoff. The necessary open airspace extended over property to the south of the runway. The City identified Owners as the property holders of that land.

¶4 Thereafter, the City entered into negotiations with Owners and prepared appraisals of the air rights in an effort to acquire an avigation easement from them. But Owners did not accept the City's offer. So, the City submitted a proposed condemnation resolution to the city council for a vote on March 6, 2007. Before the meeting, the City provided written notice to Owners on February 16, 2007. Owners attended the meeting and spoke in opposition to the condemnation, though their time was

---

2. We recognize that Owners did not do everything in this case together; however, we refer to Owners' actions collectively for convenience.

limited to three minutes. The city council delayed a vote on the resolution until March 13, 2007. Those in attendance were orally notified that the motion would be deferred to the March 13, 2007 meeting. Owners did not, however, receive written notice related to this second meeting.

¶5 Owners attended this subsequent meeting and again spoke in opposition to condemnation. Again, they were only allowed two to three minutes each to speak to the city council. And again, the vote was postponed. The City then negotiated with Owners to acquire the property in fee simple absolute, rather than an easement. Because the parties were unable to come to an agreement, a third city council meeting was held on May 22, 2007. The City sent written notice of this third meeting to Owners three business days before the meeting was held. Owners attended the meeting, but they were not allowed to speak, despite specifically requesting that opportunity. The city council thereafter voted in favor of adopting the resolution authorizing formal condemnation proceedings. After the meeting, the City again attempted to purchase Owners' property, but Owners still refused to sell. Therefore, the City initiated this action to obtain the avigation easement by condemnation.

*The Early Stages of the Condemnation Litigation*

¶6 The parties proceeded to litigate. Early on, Owners moved for judgment on the pleadings, arguing that the City did not have authority to condemn the air rights because the property was located outside the City's geographical boundaries. The City opposed the motion and filed its own motion for partial summary judgment on this issue. In its motion, the City stated the reason for the motion: "This motion is based on the grounds that the City owns and operates [TVA] . . . [and] has been granted the authority to condemn the air rights in question pursuant to several statutes including without limitation Utah Code Ann. §§ 72-10-413, 72-10-203 through 205, 10-8-2, and related statutes." The City further

asserted, "The authority to condemn is expressly granted. But if condemnation is pursued, the condemnation process must comply with appropriate procedures, statutory requirements and payment of just compensation." The City also maintained that the airspace condemnation was part of a broader expansion and improvement of both TVA and the Salt Lake International Airport, and that the new runway at TVA would make TVA "more safe, functional and efficient so that it could relieve certain demands on the SLC [Airport]." In its motion, the City set forth several statements of fact, supported by an affidavit, that outlined the City's ownership interest of TVA, the plan and potential federal funding to improve TVA, and the history of negotiations with Owners, and stated, in relevant part:

> 7. After timely and proper notice and the satisfaction of all statutory requirements and conditions, the Salt Lake City Council, at a public meeting duly and regularly held, considered the condemnation of the Air Space Easement and passed and adopted Resolution No. 37 of 2007, authorizing the City to initiate condemnation proceedings . . . .
> . . . .
> 10. The subject condemnation, and the Airport Project of which it is a part, provides direct benefits to . . . the City and its residents by improving safety and reducing congestion at the [Salt Lake City International Airport].

Owners responded and stated that all statements of fact, other than statement ten, were "undisputed *for purposes of the current motions* before this Court." (Emphasis added.)

¶7 In May 2009, after briefing and oral argument, the district court denied Owners' motion for judgment on the pleadings and granted the City's partial summary judgment motion. The court identified the sole issue in dispute as whether the City had

extraterritorial jurisdiction to condemn Owners' airspace. The court specifically explained that Owners did "not address the express authorization or distinguish the language allowing for municipal condemnation in" various sections of the Utah Code. The court ultimately concluded that various statutory provisions supplied the extraterritorial authority for the City to condemn Owners' air rights. Because Owners did not contest the matter for purposes of the motion, the court did not expressly rule whether conditions precedent to taking the property—notice and an opportunity to be heard—had been satisfied.

¶8     Years of litigation followed. In 2010, the court granted the City's motion for an order of immediate occupancy, allowing the City to occupy Owners' airspace, and ordered the City to submit an advance occupancy deposit. Owners never requested to withdraw the funds. That same year, the City amended its complaint. Owners in turn filed an amended answer and therein asserted an affirmative defense that the City's "claims [were] barred in that it failed to give the requisite notices required by Utah Code Ann. § 78B-6-501, et seq." Several years later, the City propounded a discovery request that Owners produce all documents "that relate in any way to the claims and affirmative defenses at issue in this proceeding." Along the way, the case was reassigned in the normal course to a different district judge.

*The Dismissal of the City's Condemnation Complaint*

¶9     In 2018, "on the eve of trial," the district court granted the City's motion in limine to exclude Owners' only designated appraisal expert. The City then moved for judgment as a matter of law on the issue of valuation due to the lack of competing evidence. This prompted Owners to oppose the City's motion with their own motion for judgment as a matter of law, arguing that one of their affirmative defenses had "not been resolved in these proceedings"—whether the City had failed to comply with statutory prerequisites to initiate a condemnation action under

section 78B-6-504 of the Utah Code.[3] *See* Utah Code Ann. § 78B-6-504(2)(c)–(d) (LexisNexis Supp. 2018). In response, the City described the procedural history of this case and claimed that, based on Owners' response to the City's 2009 partial summary judgment motion, the City's compliance with the statutory procedures had already been established. At a hearing on the dueling motions, the court granted the City's motion on the issue of valuation, and it also explained that whether the City had *authority* to seek the easement had been decided in the City's favor, but "whether there was proper notice and disclosure as required by the statute ha[d] not yet been decided." The court further explained that it came to this conclusion based on the language of the court's partial summary judgment order and the history of this case:

> What is unique about this case . . . is that when the [Owners] filed an opposition to the motion for partial summary judgment, they made clear in that motion that they were only conceding those facts for purposes of the motion. . . . [A] party reading that order without considering the full history of the briefing might walk away with the impression that the Court had ruled as a matter of law that . . . all the prerequisites to condemnation were at this point undisputed and fully satisfied . . . [, but] the issues the Court has described are still open . . . .

¶10  The parties then filed competing motions for summary judgment on the issue of whether the City had complied with section 78B-6-504. The City argued that it had complied with the statute, and in the alternative, that Owners could not

---

3. At the time, Utah Code section 78B-6-504 was numbered as 78-34-4. But we cite the current version of this section and all others, unless otherwise noted, in this opinion because they have not changed substantively.

demonstrate prejudice, and as a further alternative, that the City substantially complied with the statute. For their part, Owners argued that the City "provided belated notice for the hearing at which the vote . . . was taken and refused to allow [Owners] the opportunity to speak at that hearing" in violation of the statute.

¶11 After briefing and oral argument, the court granted Owners' motion on the issue. In doing so, the court described the three city council meetings and explained that "as to whether there was adequate notice and an opportunity to be heard, . . . the City has not met this particular condition precedent to filing a condemnation action." Specifically, the court noted, "The notice that was given to the [Owners] for that [third] meeting was late and they were not given an opportunity to speak." The court also concluded that, in this eminent domain context, a party is not required to show prejudice.

¶12 Owners then sought, among other things, a dismissal of the City's complaint and an award of litigation fees and costs under federal law and the Utah Constitution. *See* Utah Const. art. I, § 22; 42 U.S.C. § 4654. The City opposed the motion. On the issue of dismissal, the City requested leave to amend its complaint. The City argued that the "procedural deficiency" was subject to "a procedural solution." The City claimed it intended to initiate a new process that would comply with the statute. But the City did not attach a proposed amended complaint to its motion. In response, Owners argued that the City's intentions "are insufficient to avoid the fact that [its] prior, separate attempt at eminent domain failed," further asserting that any new attempt should require new proceedings.

¶13 The court then ruled on the remaining issues. It granted Owners' motion to dismiss, denied Owners' motion for litigation fees and costs, and denied the City's request to amend its complaint. Related to dismissal, the court concluded that the "statutory scheme needs to be strictly followed" and reiterated its earlier ruling, explaining that "failure to provide an adequate notice to be heard . . . is a fatal error . . . that warrants dismissal

of the case." As to the litigation expenses, the court denied Owners' request under federal law. The court concluded that the requirement—a final judgment that the agency cannot acquire the real property by condemnation—was not established. The court elaborated on the difference between its ruling—that the City's action was barred on procedural grounds—and one in which condemnation was rejected on the merits, stating, "[W]e fully expect that at some point, the City will bring a condemnation claim and—and will likely be successful . . . on that, if they jump through the hoops all correctly. . . . [T]here has not been a final judgment that condemnation cannot be had." The court similarly denied Owners' request for litigation fees and costs under the Utah Constitution, citing *Board of County Commissioners v. Ferrebee*, 844 P.2d 308 (Utah 1992), and explaining that just compensation does not include litigation expenses.

¶14 With the case now dismissed, the City appeals and Owners cross-appeal.

ISSUES AND STANDARDS OF REVIEW

¶15 The parties raise various issues for our consideration.[4] The City appeals, contending first that the district court erred in dismissing the case under section 78B-6-504(2)(c) of the Utah Code. "We review questions of statutory interpretation for correctness." *Utah Dep't of Transp. v. FPA West Point, LLC*, 2012 UT 79, ¶ 9, 304 P.3d 810. And because this case was dismissed on summary judgment, we review the district court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view the facts in the light most favorable to

---

4. As mentioned, *supra* ¶ 2, because we affirm the district court's dismissal of this case, we need not and do not address Owners' arguments related to issues of negotiation and valuation.

the nonmoving party. *See LD III LLC v. Mapleton City*, 2020 UT App 41, n.1, 462 P.3d 816.

¶16    The City contends in the alternative that the court erred by not allowing the City to amend its complaint. Generally, we review a "denial of motions for leave to amend under an abuse of discretion standard." *Haik v. Jones*, 2018 UT 39, ¶ 11, 427 P.3d 1155. But "[w]hen the purported futility of the amendment justifies the denial of a motion to amend, we review for correctness." *Id.* ¶ 16.

¶17    Owners cross-appeal, contending that the district court erred in concluding that they were not entitled to attorney fees and costs under federal law and the Utah Constitution. Owners also raise an embedded issue of whether the court erred in concluding that the City possesses extraterritorial power to take their air rights under various sections of the Utah Code. These issues are questions of law that we review for correctness. *See Richards v. Cox*, 2019 UT 57, ¶ 7, 450 P.3d 1074 (explaining that issues of the interpretation of constitutional and statutory provisions are questions of law reviewed for correctness).

ANALYSIS

I. Summary Judgment

¶18    The City argues that the district court erred in dismissing its complaint because the district court "failed to give effect to [Owners'] admissions and misinterpreted the May 2009 partial summary judgment granted to the City." Specifically, the City argues that Owners' admissions—that certain facts were "undisputed for the purposes of the current motions"—were binding and that the succeeding judge failed to properly consider the previous judge's partial summary judgment ruling. The City also argues that the district court erred by dismissing this case under section 78B-6-504(2)(c) of the Utah Code. We disagree on each point and address them in turn.

A.     Owners' Admission in the 2009 Summary Judgment Proceedings

¶19     We recently addressed admissions in the context of summary judgment proceedings in *Thompson v. Capener*, 2019 UT App 119, 446 P.3d 603. In that case, we explained,

> The [party] expressly qualified that their admission was solely for the purpose of the [temporary restraining order] motion. Not only do we decline to establish precedent that would discourage parties from making admissions for the limited purpose of a given motion, but we encourage litigants to do so when reasonable. If a party determines that a fact is immaterial or would muddy the water in any given motion, we see no harm in conditionally admitting that fact to promote efficiency in resolving that particular motion. And a party should not be punished for doing so.

*Id.* n.4. This case presents a similar scenario.

¶20     Here, any admissions Owners made in the 2009 summary judgment proceedings were limited in their applicability to the then-pending motions before the district court. Indeed, Owners stated that it was "undisputed for purposes of the current motions" that the City carried out "timely and proper notice and satisfaction of all statutory requirements and conditions." And *the only* issue being contested in those motions was whether the City exceeded its extraterritorial eminent domain power. Owners' admissions came in response to the City's partial summary judgment motion on the extraterritorial eminent domain issue, which in turn was in response to Owners' motion for judgment on the pleadings based on that same issue. And the district court's ruling on the matter was focused entirely on that solitary issue.

¶21 Moreover, the City's own arguments put Owners' admission in context, which was that the concession was limited to the dispute over the City's extraterritorial eminent domain power. The City specifically pointed out that its partial motion for summary judgment was "based on the grounds that the City owns and operates [TVA] . . . [and] has been granted the authority to condemn the air rights in question." And whether the City has the "authority" to condemn is a different issue entirely than whether the City complied with the statutory requirements in seeking condemnation. The district court did not address anything regarding the latter issue in ruling on whether the City had exceeded its extraterritorial eminent domain power. Indeed, the district judge later reassigned to the case specifically noted that Owners "made clear in [their response] that they were only conceding [the latter issue] for purposes of the motion. . . . [A] party reading that order without considering the full history of the briefing might walk away with the [wrong] impression."

¶22 The parties' conduct after the admission further buttresses our conclusion that the scope of the 2009 summary judgment motions was limited to adjudication of the extraterritorial authority issue. Owners never withdrew the immediate occupancy deposit, signaling that they retained their defenses, including their defense that the City had not followed the proper notice procedures. Owners also raised the statutory notice requirements as an affirmative defense to the City's amended complaint, indicating that satisfaction of the statutory requirements was in dispute. And the City propounded a discovery request for documents related to that affirmative defense. Merely pointing to a momentary or conditional stipulation does not force the district court's hand on the issue. *See Luna v. Luna*, 2020 UT 63, ¶ 38; *Baldwin v. Vantage Corp.*, 676 P.2d 413, 415 (Utah 1984) ("[T]he conduct of both parties throughout the remainder of the proceeding showed that this question was a material issue for the judge to determine."). Therefore, it is not dispositive that Owners did not dispute the

issue of notice and an opportunity to be heard at that juncture of the litigation.

¶23 In short, Owners' statement was not a conclusive admission on its own terms, due its context, and this was underscored by the parties' subsequent conduct. Rather, the issue was conditionally conceded to focus on the issue then at hand. *See Thompson*, 2019 UT App 119, n.4.

B.     Judicial Consideration

¶24 The City next contends that the successor judge committed reversible error in how he dealt with the predecessor judge's 2009 partial summary judgment ruling. In particular, the City argues that the successor judge erred in concluding that the issue of "whether there was proper notice and disclosure as required by the statute ha[d] not yet been decided." The City bases this argument on the language in the ruling in which the court explained that one of the undisputed issues was that Owners "were provided with timely and proper notice regarding the condemnation efforts." We reject this argument because we disagree with its premise. The language the City refers to was not a ruling on the issue.

¶25 When a party files a motion, a court evaluates whether the party is entitled to the relief it seeks. *See* Utah R. Civ. P. 7; *id.* R. 56(a). When the court does not engage in any analysis, evaluation, or state its decision, it has not ruled on that issue. Additionally, "[a] court's interpretation of its own order is reviewed for clear abuse of discretion and we afford the district court great deference." *Uintah Basin Med. Center v. Hardy*, 2008 UT 15, ¶ 9, 179 P.3d 786.

¶26 Here, reconsideration of the notice issue was unnecessary because the issue was not decided in the 2009 partial summary judgment ruling. In that ruling, the court framed the issue addressed by the motion—whether the City had extraterritorial eminent domain power—and described the issues it was

assuming for the purposes of the motion at that time. The court merely identified that the notice issue was not in dispute for that motion and then did not mention it again. Indeed, the court spent the rest of the order addressing the issue of extraterritorial eminent domain power. In short, we agree with the successor judge that the notice issue had not been decided in the 2009 partial summary judgment ruling, and therefore the court did not commit reversible error in its interpretation of the predecessor judge's order. *See id.*[5]

C.     Section 78B-6-504(2)(c)—Statutory Conditions Precedent to Taking

¶27     The City finally contends that the district court erred in dismissing its complaint under Utah Code section 78B-6-504(2)(c). The City concedes that it did not strictly comply with the requirements of the statute, namely by neglecting the time requirement for sending written notice and not allowing Owners to speak at the third council meeting. But the City proceeds with a three-part argument. It first argues that "the district court erred by requiring strict compliance," suggesting substantial compliance is enough. It next asserts that the actual notice provided was enough. And it finally argues that Owners had to, but could not, show prejudice. We disagree and affirm the district court's dismissal.

¶28     To frame the arguments, we first examine the statute's language. The relevant language of section 78B-6-504 confirms

---

5. As a side note, this case is somewhat unusual from a practical standpoint. In many cases, after an order of immediate occupancy is granted, the government begins occupying the space in a way that is permanent (e.g., by installing a road or power poles). Hence, parties in other cases who choose to wait years after the order of immediate occupancy to raise an issue with the original notice or opportunity to be heard may confront a more difficult practical impediment.

that the City's actions fell short of both the ten-business-day-written notice and the-opportunity-to-be-heard requirements. *See* Utah Code Ann. § 78B-6-504(2)(c)–(d) (LexisNexis Supp. 2018).[6] Those subsections required that, "[b]efore taking a final vote to approve the filing of an eminent domain action," the City provide written notice to Owners "at least 10 business days before the public meeting" and "allow the property owner the opportunity to be heard on the proposed taking" at each meeting a vote was expected to be held. *Id.*[7]

---

6. The relevant provisions, in full, state:

> (c) Before taking a final vote to approve the filing of an eminent domain action, the governing body of each political subdivision intending to take property shall provide written notice to each owner of property to be taken of each public meeting of the political subdivision's governing body at which a vote on the proposed taking is expected to occur and allow the property owner the opportunity to be heard on the proposed taking.
>
> (d) The requirement under Subsection (2)(c) to provide notice to a property owner is satisfied by the governing body mailing the written notice to the property owner:
>
> (i)    at the owner's address as shown on the records of the county assessor's office; and
>
> (ii)    at least 10 business days before the public meeting.

Utah Code Ann. § 78B-6-504(2)(c)–(d) (LexisNexis Supp. 2018).

7. There is wrangling over whether allowing landowners an opportunity to speak at some point in the process fulfills the-opportunity-to-be-heard component of the statute, rather than

(continued…)

¶29    The City is right to concede that it did not fulfill the statutory requirements. Based on the undisputed facts, the City fully complied with those requirements as to the first meeting by sending notice at least ten business days in advance and allowing Owners to speak at the meeting. However, it only half complied as to the second meeting because it allowed Owners to speak but did not send written notice at least ten business days in advance. And it did not comply with either requirement as to the third meeting because the notice it sent arrived only three business days before the meeting and Owners were not allowed an opportunity to be heard.

¶30    Notwithstanding its acknowledged shortcomings, the City maintains that dismissal of this case was erroneous, arguing that substantial compliance rescues it from its procedural missteps. But the City's argument is contrary to longstanding precedent. Statutes governing the procedures and prerequisites for exercising either a general or a specific grant of eminent domain power receive a strict construction. *See Salt Lake County v. Murray City Redevelopment*, 598 P.2d 1339, 1345 (Utah 1979) ("The general rule is that, where the statute prescribes the

---

(…continued)

allowing them the opportunity to speak at every meeting. In our view, the phrase "of each public meeting" and more specifically the word "each" answers that landowners of property to be taken are entitled to receive an opportunity to speak at every public meeting with an expected vote. *See* Utah Code Ann. § 78B-6-504(2)(c) (LexisNexis Supp. 2018). The point is to speak to the decision makers. Asserting that being given three minutes to speak at any point in the process is sufficient ignores the reality that in any given meeting city council members may be absent or the membership of the council can change over time. Accordingly, unless the landowner is allowed to speak at the meeting where the vote is taken, those voting might never hear any of the landowner's concerns. Regardless of the answer, however, the City did not fulfill the notice requirement.

procedure or steps to be taken by a municipal corporation in exercising the right of eminent domain, the procedure prescribed by the statute becomes a matter of substance, and must be strictly followed by the condemnor as against the owner of the property sought to be condemned." (cleaned up)); *accord Town of Perry v. Thomas*, 22 P.2d 343, 346 (Utah 1933); *Town of Tremonton v. Johnston*, 164 P. 190, 192 (Utah 1917); *W. & G. Co. v. Redevelopment Agency*, 802 P.2d 755, 761 (Utah Ct. App. 1990).

¶31    The case of *Salt Lake County v. Murray City Redevelopment*, 598 P.2d 1339 (Utah 1979), is particularly on point. There, Salt Lake County attempted to redevelop areas it had determined to be blighted, published several notices, and adopted an ordinance to do so. *Id.* at 1340. The appellants challenged the ordinance, but the district court granted summary judgment to the county. *Id.* at 1341. On appeal, the parties disputed whether the county had complied with a notice statute. *Id.* at 1344. That statute required notice to be given "not less than once a week for [f]our successive weeks" to enable the county to exercise eminent domain power. *Id.* (cleaned up). In concluding that the county violated the statute, the court explained that the statute was to be construed strictly: "[B]ecause redevelopment is a serious action that may be in derogation of individual property rights, . . . strict compliance with the enabling legislation is required to enact an ordinance setting up a redevelopment plan." *Id.* The court later explained that the county's several publications did not meet the statute's strict requirements and that "the ordinance was not validly adopted" because "[n]o notice was published during" the fourth week and "the hearing commenced on the [v]ery day the last notice was published." *Id.* at 1345–46; *see id.* (noting that courts "must remain sensitive to the need for [s]trict compliance with . . . statute[s] concerning notice . . . in order to protect private property rights, which are of fundamental importance"). The court therefore reversed. *Id.* at 1346.

¶32    Here, the facts are strikingly similar. While the City notified Owners of the eminent domain proceedings, the notice was inadequate because it did not adhere to the statute's

directive regarding the timing of that notice. Thus, *Murray City Redevelopment* confirms that this statute must be construed strictly against the City. Moreover, the purpose for reading eminent domain statutes strictly—to protect the rights of property owners—also supports reading this statute strictly. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 17 n.16, 267 P.3d 863.

¶33     Lastly, the cases the City cites are distinguishable because they deal with other statutory topics. *See Aaron & Morey Bonds & Bail v. Third Dist. Court*, 2007 UT 24, ¶ 11, 156 P.3d 801 (fax number requirement in bail bond notification); *Cache County v. Property Tax Div.*, 922 P.2d 758, 764 (Utah 1996) (time to complete review of property tax appeal); *Kennecott Copper Corp. v. Salt Lake County*, 575 P.2d 705, 707 (Utah 1978) (time for setting tax levy); *Southwick v. Southwick*, 2011 UT App 222, ¶ 11, 259 P.3d 1071 (recitation of statutory provision related to disclaimer of interest in trust). And the statute in this case does not relate to a mere fax number, recitation of a statute in a disclaimer, or a timeframe like the ones in the cited cases; instead, it goes to the weighty matter of providing procedural fairness and placing a check on a government entity's immense power to deprive an owner of a substantive private property right. Thus, those cases do not allow a reading of substantial compliance into this statute because the statute's requirements are mandatory.

¶34     For the foregoing reasons, we conclude that the notice and hearing requirements of section 78B-6-504(2)(c) are mandatory and require strict compliance. *See Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 14, 37 P.3d 1156 ("Where, as here, the statute is clear, readily available, and easily accessible by counsel, there is no reason to require anything less than strict compliance.").

¶35     That leaves the City's two latter arguments. The City makes an argument that actual notice and previous opportunities to be heard fulfilled the purposes of the statute. But this argument is a nonstarter. Once the statute is determined

to require strict compliance, all bets are off for any actions other than exactness. *See Moore v. Schwendiman*, 750 P.2d 204, 206 (Utah Ct. App. 1988) ("[O]ne must comply precisely with a mandatory requirement or the transaction or process is invalidated."). Actual notice is not what the statute says. And "[c]ompliance with the statute is the determining issue, not actual notice. In the absence of some ambiguity, we will not disturb explicit legislative requirements and read into the statute an actual notice exception." *See Greene*, 2001 UT 109, ¶ 15. Doing so would fly in the face of our pursuit, which is to give full force to our legislature's intent and the law as it is written. The City's actions indisputably violated the explicit terms of the statute and subverted its objective of abundant procedural fairness to property owners. Therefore, the City's argument is unpersuasive.

¶36 The City also argues that the district court erred by not requiring Owners to prove prejudice. Owners contest the premise that prejudice need be shown at all with respect to violations of eminent domain statutes. We agree that a prejudice showing is unnecessary here.[8]

¶37 Many of the same authorities that dictated a strict construction of statutes regarding substantive rights like section 78B-6-504 also teach that showing prejudice is unnecessary when a substantive right is at issue. *See McBride-Williams v. Huard*, 2004 UT 21, ¶ 12, 94 P.3d 175 ("A party's failure to satisfy a

___

8. We acknowledge that our supreme court recently declined to address this issue because it was unnecessary to do so under the circumstances of the case before them. *See Potter v. South Salt Lake City*, 2018 UT 21, ¶¶ 27–28 & n.3, 422 P.3d 803 ("We see no reason to reach the question whether prejudice is required in an eminent domain setting because we conclude this case does not sound in eminent domain."). To us, it appears that our supreme court has repeatedly addressed the issue implicitly in their previous jurisprudence as we explain.

precondition results in an adjudication for lack of jurisdiction . . . ." (cleaned up)); *Murray City Redevelopment*, 598 P.2d at 1345 (explaining that procedural preconditions are "jurisdictional, and may not be disregarded," and not conducting prejudice analysis (cleaned up)); *Town of Tremonton v. Johnston*, 164 P. 190, 192 (Utah 1917) (stating that landowners have "the right to insist that the statute be followed" and reversing without analyzing prejudice); *W. & G. Co. v. Redevelopment Agency*, 802 P.2d 755, 765 (Utah Ct. App. 1990) (explaining that "[i]f adequate notice and an opportunity to be heard are not given, the proceedings are void and those not properly notified are not bound by the proceedings because the giving of such notice is jurisdictional" and not addressing the issue of prejudice); *Moore*, 750 P.2d at 206 ("[O]ne must comply precisely with a mandatory requirement or the transaction or process is invalidated."); *Southwick*, 2011 UT App 222, ¶ 12 (suggesting that substantial rights require strict compliance, not prejudice consideration).

¶38   Two cases from our supreme court lend further support to not requiring a prejudice analysis. In *Marion Energy, Inc. v. KFJ Ranch Partnership*, 2011 UT 50, 267 P.3d 863, the court affirmed the district court's dismissal of the case due to lack of authority to condemn the land. *Id.* ¶ 34. Importantly, the court did not analyze prejudice in coming to its conclusion. *See generally id.* And more recently in *Salt Lake City Corp. v. Evans Development Group, LLC*, 2016 UT 15, 369 P.3d 1263, the court vacated a final judgment of condemnation because the government entity "failed to follow statutory requirements that the *condemnor* be in charge of the public use to which the property [is] put and to oversee the construction of that public use." *Id.* ¶ 23. Again, the court did this without engaging in a prejudice analysis. *See generally id.* Thus, we conclude that Owners need not show prejudice.

¶39   In sum, we view section 78B-6-504(2)(c)'s requirements as strict based on longstanding precedent. Actual notice simply won't fly. And we conclude that Owners need not show

prejudice in this context. Accordingly, we affirm the district court's interpretation and dismissal under the statute.

## II. Amendment of the Complaint

¶40 Alternatively, the City argues that the district court erred by not allowing the City to amend its complaint. We disagree. An amendment in this case would be unwarranted. The City failed to adequately explain why an amendment should be granted and failed to provide a proposed amended complaint for the district court's consideration. *See* Utah R. Civ. P. 15(a)(2) ("The party must attach its proposed amended pleading to the motion to permit an amended pleading."); *Haik v. Jones*, 2018 UT 39, ¶¶ 34–35, 427 P.3d 1155 ("The district court did not abuse its discretion in denying a procedurally deficient motion. The district court also properly concluded that such an amendment would be futile because [petitioner] provided no basis under which he would have alleged standing."); *Puttuck v. Gendron*, 2008 UT App 362, ¶ 24, 199 P.3d 971 ("The trial court did not abuse its discretion in denying [p]laintiffs' request for leave to amend their complaint because [p]laintiffs did not comply with Utah's formal motion practice rules when they made the request.").

¶41 In addition, amending the complaint would be futile because the City cannot retroactively follow the statutory preconditions for condemning private property rights. The facts are undisputed, and amendment will not change them. The City failed to follow the statutory conditions, and it must file a new complaint—alleging facts that fulfill section 78B-6-504—if it elects to condemn Owners' air rights again. Accordingly, the district court's refusal to allow the City to amend its complaint was not improper.

## III. Attorney Fees and Costs

¶42 As part of their cross-appeal, Owners contend that the district court erred by refusing to award them attorney fees and

other litigation costs under both federal law and the Utah Constitution. However, after their appeal was filed, our supreme court issued its decision in *Utah Department of Transportation v. Boggess-Draper Co.*, 2020 UT 35, 467 P.3d 840. This prompted Owners to correctly concede that constitutional just compensation does not include litigation fees and costs. *See* Utah Const. art. I, § 22; *Boggess-Draper Co.*, 2020 UT 35, ¶ 47 (affirming the denial of a motion for litigation fees and costs under the Utah Constitution); *Board of County Comm'rs v. Ferrebee*, 844 P.2d 308, 313–14 (Utah 1992) (holding that the constitutional right of just compensation extends only to takings of and damages to property, not to the costs of litigation); *Redevelopment Agency v. Daskalas*, 785 P.2d 1112, 1123 (Utah Ct. App. 1989) (explaining that "just compensation is for the property and not to the owner" and that "attorney fees and other" litigation expenses "are non-compensable as 'just compensation'" (cleaned up)); *see also United States v. Bodcaw Co.*, 440 U.S. 202, 203 (1979) (per curiam) ("Attorneys' fees and expenses are not embraced within just compensation." (cleaned up)). Accordingly, we do not address this constitutional issue further.

¶43 As to Owners' arguments under federal law, we disagree and affirm the district court's denial of fees and costs. Owners start by arguing that they are entitled to their litigation fees and costs under federal law, primarily citing section 4654 of the United States Code.[9] That statute provides that an owner of real property is entitled to reasonable costs and attorney fees if "the

---

9. Owners peripherally cite a federal regulation. *See* 49 C.F.R. § 24.107 (2005). But even assuming that regulation applies to the City because it receives federal funding, Owners are not entitled to litigation fees and costs under that regulation for one of the same reasons they are not entitled to litigation fees and costs under the statute: the district court did not enter a judgment that the City *cannot* condemn the property rights; rather, the ruling was that the City did not follow the statutory checklist for doing so. *See infra* ¶ 44.

final judgment is that the Federal agency cannot acquire the real property by condemnation." 42 U.S.C. § 4654(a)(1). When the relevant statutory subsection is read, it reveals that Owners' argument has several insurmountable flaws:

> *The Federal court* having jurisdiction of *a proceeding instituted by a Federal agency* to acquire real property by condemnation shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for his reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred because of the condemnation proceedings, *if—*
> (1) *the final judgment is that the Federal agency cannot acquire the real property by condemnation . . . .*

*Id.* § 4654(a) (emphasis added).

¶44   First, that section is unhelpful to Owners because it applies only to federal courts by its express terms. *See id.* Second, it is also inapplicable because the City is indisputably not a federal agency. *See id.*; *see also id.* § 4601(1) (providing a definition for "Federal agency" that does not include states or their political subdivisions); *Ferrebee*, 844 P.2d at 312 ("[T]he policies outlined in subchapter III of the Uniform Act apply only to federal agencies and programs . . . ."); 8A Patrick J. Rohan & Melvin A. Reskin, *Nichols on Eminent Domain* § G20.05[3] (3d ed. 2018) ("[T]he provisions of 42 U.S.C. § 4654, entitling successful plaintiffs to litigation expenses, apply only to takings by a federal agency . . . ."). Finally, even if that statute were applicable, it would not provide the result Owners seek because the final judgment of the district court was not that the City "*cannot* acquire the real property by condemnation." *See* 42 U.S.C. § 4654(a)(1) (emphasis added). Rather, the court dismissed this particular action because the City did not follow the statutory procedural conditions for doing so. *Cf. United States*

*v. 4.18 Acres of Land*, 542 F.2d 786, 789 (9th Cir. 1976) (per curiam) ("The trial court held only that the action was premature, dismissing without prejudice because of a correctable procedural flaw. Such a dismissal is not a final judgment that the federal agency 'cannot acquire the real property by condemnation.'" (cleaned up)). Indeed, the district court made this very distinction and specifically stated that the City can condemn the property, stating: "[W]e fully expect that at some point, the City will bring a condemnation claim and—and will likely be successful at some point on that, if they jump through the hoops all correctly. . . . [T]here has not been a final judgment that condemnation cannot be had." Thus, the statute does not support Owners' argument for litigation fees and costs.

¶45    In response, Owners contend that the district court erred in concluding that the City could potentially acquire the property by condemnation. They argue that the City cannot acquire their property by condemnation, asserting that such would exceed the City's extraterritorial condemnation power. But the district court's conclusion on this point was correct under at least two independent statutory provisions.

¶46    First, the City has the authority to condemn the air rights at issue here under section 72-10-413 of the Utah Code. That statute deals with political subdivisions that have certain connections to airports and specifically states,

> A political subdivision within which the property or nonconforming use is located *or the political subdivision owning the airport* or served by it may acquire, by purchase, grant, or condemnation in the manner provided by the law under which political subdivisions are authorized to acquire real property for public purposes, an air right, navigation easement, or other estate or interest in the property or nonconforming structure or use in question . . . .

Utah Code Ann. § 72-10-413 (LexisNexis 2017) (emphasis added).

¶47    By its explicit terms, the statute provides a political subdivision that owns an airport with the power to condemn property related to its airport. Importantly, the statute does not limit the owning political subdivision's condemnation power to those airports inside its geographic territory; rather, it merely requires ownership of an airport. Indeed, the statute differentiates between "[a] political subdivision within which the property or nonconforming use is located" and a "political subdivision owning the airport," granting both of them condemnation authority. *See id.* Thus, the location of airports was on the legislature's mind when it drafted the statute, and it chose not to limit geographically the condemnation power of political subdivisions that own airports. Another section of the Uniform Airports Act buttresses this point, saying, "A *county* may not exercise the authority conferred in this section outside of its geographical limits except jointly with an adjoining county." *Id.* § 72-10-203(2) (LexisNexis Supp. 2019) (emphasis added). By including only a county and not any of the other political subdivisions or authorities, this language further evinces the legislature's intent to limit territorial power and its choice to limit such power only as it pertains to a county. Finally, the legislature explicitly contemplated extraterritorial airports by requiring those political subdivisions that own them to establish advisory boards. *See generally id.* § 72-10-203.5 (LexisNexis 2017) (describing advisory boards for "extraterritorial airports" defined as airports outside the boundary of a municipality and located in another). Because it is undisputed that the City owns TVA, the City can acquire the air rights it seeks through condemnation under section 72-10-413—if, of course, it follows the statutorily prescribed steps.

¶48    Additionally, the Utah Code otherwise grants the City authority to condemn the air rights at issue here. It contemplates a situation in which landowners and the described entities cannot come to an acquisition agreement and states in full:

> (1) Private property needed by the department or a county, municipality, or airport authority for an airport or landing field or for the expansion of an airport or landing field may be acquired by grant, purchase, lease, or other means if the department or the political subdivision is able to agree with the owners of the property on the terms of acquisition.
> (2) *If no agreement can be reached, the private property may be obtained by condemnation* in the manner provided for the state or a political subdivision to acquire real property for public purposes.

Utah Code Ann. § 72-10-205 (LexisNexis 2017) (emphasis added). Here, the City sought but could not agree with Owners on an acquisition of the air rights, and therefore subsection two of the statute specifically empowered the City to obtain the air rights by way of condemnation. *See id.*; *see also id.* § 72-10-209 (LexisNexis Supp. 2019) (providing condemnation power to municipalities with airports to "acquire the air rights over private property necessary to [e]nsure safe approaches to the landing areas of the airports.").[10]

¶49 Finally, these statutes fall under the last category of eminent domain canons—grants of eminent domain power for a clear and explicit purpose—which are construed liberally. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 16 n.14, 267 P.3d 863; *Monetaire Mining Co. v. Columbus Rexall Consol. Mines Co.*, 174 P. 172, 175 (Utah 1918*)*. The purpose here is tending to airports. Thus, if there were any ambiguity, it would need to be read in furtherance of extraterritorial power.

---

10. The parties also dispute whether Utah Code section 10-8-2 grants the City extraterritorial condemnation power here. But we do not decide whether it does because of these other statutory grants of power.

¶50　In sum, these statutory provisions unambiguously provide the City with extraterritorial eminent domain power in this case. *Monarrez v. Utah Dep't. of Trans.*, 2014 UT App 219, ¶ 16, 335 P.3d 913 ("A determination that a statute's plain language unambiguously informs the public of its meaning generally ends the inquiry about a statute's interpretation.").

¶51　Nevertheless, Owners make an intra-textual argument in response. They argue that these statutes require "additional, independent authority, such as the general condemnation authority" for the City to condemn their property because the statutes include the phrase "in the manner provided." Utah Code Ann. §§ 72-10-205, -413. We disagree. We read that phrase as referring to procedure, not authority. *Cf. Salt Lake City Corp. v. Evans Dev. Group, LLC*, 2016 UT 15, ¶ 23, 369 P.3d 1263 ("[A]lthough a property exchange may not be altogether prohibited by our eminent domain statutes, it may not be accomplished *in the manner* attempted here." (emphasis added)); *see also Manner*, Dictionary.com, https://www.dictionary.com/browse/manner#:~:text=noun,the%20manners%20of%20her%20time [https://perma.cc/HZA9-R7YX] ("[A] way of doing, being done, or happening; mode of action occurrence, etc."); Utah Code Ann. § 68-3-11 (LexisNexis 2017) ("Words and phrases are to be construed according to the context and the approved usage of the language . . . ."). And this case is a perfect example of how the City could have the authority to condemn the property but failed to do so in a procedurally proper way— i.e., in the manner provided by law.[11]

---

11. Reading these statutes as requiring an independent grant of authority would render them greatly superfluous, which is a result we seek to avoid. *See Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 ("Wherever possible, we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." (cleaned up)); Antonin Scalia & Bryan A. Garner, *Reading Law:*
(continued…)

¶52 Owners also argue that the legislature's amendment of section 72-10-203 limited extraterritorial condemnation power to joint and adjoining counties. Owners point out that this provision used to say "either within or without their geographical limit," *see* Utah Code Ann. § 72-10-203 (Michie 1994), but was later amended to state that authority may not be exercised "outside of its geographical limits except jointly with an adjoining county," *see id.* § 72-10-203(2) (LexisNexis Supp. 2019). But this argument misses the mark. To start, the section relates to operations of currently owned property rights, not rights the government entity would acquire through eminent domain. *See id.* § 72-10-203(1). Moreover, the previous language was superfluous because the other sections already provide the power to condemn extraterritorial property by their own terms. *See id.* §§ 72-10-205, -413 (LexisNexis 2017).

¶53 Finally, this argument overlooks two key phrases. First, the statute says "the authority conferred in this section," which clarifies that the following restriction of geographical limits or joint ventures therein applies only to the actions taken under section 72-10-203. *See id.* § 72-10-203(2) (LexisNexis Supp. 2019). Again, that authority relates to currently owned property, not other actions taken under other sections of the Utah Code. Second, as mentioned, the statute focuses on counties, stating that a "county may not exercise the authority conferred in this section outside of its geographical limits except jointly with an

---

(…continued)

*The Interpretation of Legal Texts* 176 ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect, and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred."). Indeed, why would the legislature enact such statutes purporting to provide specific condemnation authority by their terms, only to require the government entity to search for authority elsewhere?

adjoining county," *id.*, and not on any other political subdivisions or authorities. Once more, this evinces the legislature's intent to limit territorial power and its choice to limit the power of only a county. Thus, section 72-10-203 does not help Owners' cause.

¶54 In sum, we affirm the district court's ruling that the City did not exceed its extraterritorial power to condemn the property at issue in this case. The City remains able to condemn the air rights—or at least no court has ruled the City cannot. Accordingly, we also affirm the district court's denial of Owners' request for litigation fees and costs under the cited federal laws.

CONCLUSION

¶55 We affirm the district court's dismissal of this case under section 78B-6-504(2)(c) of the Utah Code. In doing so, we reject the City's argument that Owners' statement related to the 2009 partial summary judgment motion was a conclusive admission for purposes other than the then-pending motions. We also reject the City's argument that the court erred in how it viewed that prior ruling. We disagree with the City on its arguments related to section 78B-6-504(2)(c). That statute must be strictly followed and requires no proof of prejudice. And we reject the City's argument that the court erred by not allowing the City to amend its complaint, as any amendment would have been futile. As to the issues in Owners' cross-appeal that we reach, we affirm the district court's denial of litigation fees and costs to Owners, for reasons including the associated legal conclusion that the City can exercise extraterritorial eminent domain power.

¶56 Affirmed.

———————