**2026 UT App 26**

# THE UTAH COURT OF APPEALS

MFRE RIVER JORDAN MINK RANCH SOUTH SLLC, MFRE LLC,
MFRE RIVER JORDAN MINK RANCH NORTH SLLC,
JOSHUA MCLACHLAN, AND SCOTT MCLACHLAN,
Appellants,
*v.*
CITY OF SARATOGA SPRINGS,
Appellee.

Opinion
No. 20250146-CA
Filed February 20, 2026

Fourth District Court, Provo Department
The Honorable Robert C. Lunnen
No. 240401411

Scott O. Mercer and J. Adam Knorr,
Attorneys for Appellants

Barton H. Kunz II and Kevin S. Thurman,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

ORME, Judge:

¶1      The above-captioned appellants (collectively, MFRE[1]) seek interlocutory review of the district court's denial of their motion to dismiss the eminent domain action brought by the City of Saratoga Springs (the City) to acquire land owned by MFRE. Specifically, MFRE argues that the court erred in holding that the City satisfied its statutory disclosure obligations at least 30 days prior to filing suit and that MFRE's statutory right to notice and

---

1. For simplicity, this opinion also attributes any actions taken by individual appellants to MFRE, collectively.

to be heard at the City's public meeting was not violated. We agree with the district court and accordingly affirm its denial of the motion to dismiss.

BACKGROUND[2]

¶2　The City purchased a well and various easements located on MFRE's property. It subsequently constructed a well pump house and made other site improvements, which were completed in late 2023. Although the pump house is operational, it is not connected to the City's water distribution systems. The City now seeks to acquire, in fee simple, just shy of one acre of land surrounding the well and two permanent and two temporary utility easements from MFRE. These acquisitions will facilitate installation of power lines and pipelines necessary to connect the pump house to the City's pressurized irrigation, storm water, and culinary water distribution systems.

¶3　The City served MFRE with the statutorily required statements and notices through letters dated November 16, 2023 (the November Letter); February 27, 2024 (the February Letter); and March 22, 2024 (the March Letter). The November Letter included a written statement regarding MFRE's rights and remedies, as required by Utah Code section 78B-6-505(2)(b)(ii).[3]

---

2. "Because this case comes to us on an interlocutory appeal, the allegations we recite have not been tried and therefore remain allegations. Accordingly, we recount the facts as alleged and in a light most favorable to the ruling below." *Wild Country Holdings, LLC v. WE Five, LLC*, 2025 UT App 54, n.1, 570 P.3d 373 (quotation simplified).

3. The November Letter had contained language asking MFRE to "review all the enclosed documents" and had referenced an

(continued…)

¶4    The February Letter and the March Letter, which were nearly identical, did not repeat the subsection 505(2)(b)(ii) statement. Rather, both letters informed MFRE that the city council (the Council) would hold a public meeting to vote on a resolution initiating eminent domain proceedings on MFRE's property (the Resolution), and a copy of the Resolution was included with each letter.[4] The two letters also stated that as the fee simple owner of the subject property, MFRE had "the right to attend the . . . Council's public meeting and to be heard by the Council on the proposed condemnation action" and "may attend and speak to the Council" at the meeting if MFRE so desired. Lastly, both letters included "a complete printed copy of the materials provided on the Office of the Property Rights Ombudsman website . . . regarding the acquisition of property for a public purpose and a property owner's right to just compensation" (the Ombudsman's Materials), as required by Utah Code section 78B-6-505(2)(b)(i).

¶5    The public meeting in question was held on April 9, 2024. The publicly-noticed agenda for the meeting (the Agenda) set

---

"Ombudsman's Acquisition Brochure—Your Guide to Just Compensation" as one such inclusion. But the copy of the November Letter in the record does not include a copy of that brochure, which the City was required to provide MFRE pursuant to Utah Code section 78B-6-505(2)(b)(i). The City represented to the district court that although the copy of the November Letter in the record did not include the required brochure, the physical copy sent to MFRE did include it. MFRE disagrees. In any event, the February Letter and the March Letter both included the required brochure.

4. The March Letter differed from the February Letter in two respects: (1) the date of the public meeting was updated to April 9, 2024 and (2) a sentence was added informing MFRE that it could request a copy of the engineer's memorandum.

apart time for "Public Input," which was "for the public to express ideas, concerns, and comments for subject matter not listed as a public hearing on this agenda."[5] The Agenda also categorized the items to be addressed at the meeting as "Business Items," "Consent Items," or items to be addressed at the "Public Hearing" portion of the meeting. The Agenda defined Consent Items as those "[t]he Council may approve . . . without discussion or public comment." But the Agenda further indicated that the Council "may remove an item to the Business Items for discussion and consideration." Business Items were items that the Council would discuss and may approve, also "without public comment." But as for the items slated for the Public Hearing portion of the meeting, the Agenda indicated that "[t]he Council will accept public comment and may approve" those items. The Agenda listed the Resolution as a Consent Item, meaning that it was subject to neither discussion by the Council nor public comment.

¶6    MFRE did not attend the public meeting. At the meeting, after apparently realizing the mistake on the Agenda, the Council moved consideration of the Resolution from the Consent Item category to the Business Item category. And when the time came to discuss the Resolution, the City's mayor invited MFRE to speak, but no one responded. The Council did, however, enter into the record and discuss a letter MFRE's attorney submitted to the Council prior to the meeting. The Council unanimously voted to pass the Resolution.

¶7    On April 12, 2024, the City initiated eminent domain proceedings in district court to acquire MFRE's property. MFRE moved to dismiss the complaint under rule 12(b)(1) of the Utah Rules of Civil Procedure, arguing that the City had failed to comply with two statutory prerequisites: (1) Utah Code section 78B-6-505(3), because the City initiated suit less than 30 days after

---

5. The Agenda listed only one unrelated item as subject to the Public Hearing.

providing MFRE with the March Letter, and (2) Utah Code section 78B-6-504(4)(a),[6] because the Agenda's initial listing of the Resolution as a Consent Item deprived MFRE of its right to be heard at the public meeting.

¶8 The district court denied the motion. It ruled that the City did not initiate suit prematurely because, even without the March Letter, the required section 78B-6-505(2)(b) disclosure materials were provided "months and months" in advance in the November Letter and the February Letter. The court stated that when read together, subsections 505(2)(b) and 505(3) refer to "notice," and not "the last notice." The court also ruled that MFRE's right to be heard at the public meeting was not violated because, despite the mischaracterization on the Agenda of the Resolution as a Consent Item, MFRE was given an opportunity to speak at the meeting, and the Council discussed the letter MFRE's attorney submitted.

¶9 MFRE petitioned for interlocutory review of the district court's denial of its motion to dismiss, which this court granted.

ISSUE AND STANDARD OF REVIEW

¶10 MFRE challenges the district court's denial of its motion to dismiss. Specifically, it argues that the court erred in holding that (1) the November Letter and the February Letter satisfied Utah Code section 78B-6-505(3)'s timing requirement for providing the disclosure materials and (2) MFRE's statutory right to notice and to be heard at the public meeting was not infringed. We review a district court's ruling on a motion to dismiss for correctness,

---

6. At the time, the relevant provision was codified at Utah Code section 78B-6-504(2)(c). Because the statute remains substantively unchanged, we cite the current version of this and all other relevant provisions of the Utah Code for convenience.

according "no deference to the court's decision." *Wild Country Holdings, LLC v. WE Five, LLC*, 2025 UT App 54, ¶ 16, 570 P.3d 373 (quotation simplified).

## ANALYSIS

### I. Timing of Disclosure Requirements

¶11 Utah Code section 78B-6-505 outlines the negotiation and disclosure requirements that must be met before an eminent domain action may be filed in district court. Subsections 505(2) and 505(3) focus on the timing and content of the required disclosures. Subsection 505(2) requires that prior to voting on whether to file an eminent domain action to acquire property, a political subdivision must "make a reasonable effort to negotiate with the fee simple owner for the purchase of the property," Utah Code Ann. § 78B-6-505(2)(a) (LexisNexis Supp. 2025), and provide certain disclosure materials to the fee simple owner, *see id.* § 78B-6-505(2)(b). These materials are (1) the Ombudsman's Materials, which are "a complete printed copy of the materials provided on the Office of the Property Rights Ombudsman website . . . regarding the acquisition of property for a public purpose and a property owner's right to just compensation," *id.* § 78B-6-505(2)(b)(i), and (2) a written statement, "in substantially" the same form as the one called for in the statute, that informs the fee simple owner of additional rights and remedies, *id.* § 78B-6-505(2)(b)(ii).[7]

---

7. Subsection 505(2)(b)(iii) sets forth the written statement of rights and remedies that must be provided to a "claimant," *see* Utah Code Ann. § 78B-6-505(2)(b)(iii) (LexisNexis Supp. 2025), which is defined as "a person who is a record interest holder of real property sought to be condemned" but not "a fee simple owner," *id.* § 78B-6-505(1)(a)(i)–(ii)(A). Because MFRE is the fee

(continued…)

¶12  Both sets of disclosure materials must be provided "as early in the negotiation process . . . as practicable, but no later than 14 days before the day on which a final vote is taken to approve the filing of an eminent domain action." *Id.* § 78B-6-505(2)(b). Subsection 505(3) further directs that the eminent domain action may not be initiated "until 30 days after the day on which the disclosure and materials required in Subsections (2)(b)(ii) and (iii) are provided to the fee simple owner and each claimant." *Id.* § 78B-6-505(3). Only "upon a showing of exigent circumstances and for good cause" may a district court "shorten" these 14-day and 30-day waiting periods. *Id.* § 78B-6-505(5).

¶13  On appeal, MFRE does not assert that the City failed to provide it with any of the statutorily required disclosure materials. Rather, its challenge focuses on the timing of the March Letter. MFRE contends that because the March Letter preceded the City's filing of the eminent domain action by less than 30 days, the City failed to satisfy the timing requirement of subsection 505(3). It further argues that the district court erred in concluding that the November Letter and the February Letter nevertheless satisfied the 30-day waiting period because, in MFRE's view, "the City restarted the statutory timeline" by sending the March Letter, and it therefore "could no longer rely on" the February Letter.[8]

---

simple owner of the subject property, the statement the City was required to provide MFRE is governed by subsection 505(2)(b)(ii).

8. MFRE also asserts that the March Letter "contained new information," but it does not elaborate on this point. As discussed above, the purpose of the February Letter and the March Letter was to inform MFRE of the upcoming public meeting at which the Council was to vote on whether to initiate eminent domain proceedings. The February Letter and the March Letter were nearly identical except that the March Letter updated the date of the public meeting to April 9, 2024, and added a sentence

(continued…)

Additionally, MFRE asserts that the November Letter "is inapposite" because it did not include the Ombudsman's Materials. *See supra* note 3.

¶14   "Our primary goal when interpreting a statute is to ascertain the legislature's intent," "the best evidence" of which "is the plain language of the statute itself." *McKitrick v. Gibson*, 2024 UT 1, ¶ 31, 541 P.3d 949 (quotation simplified). Thus, "wherever possible, we give effect to every word of a statute, avoiding any interpretation which renders parts or words in a statute inoperative or superfluous." *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 12, 284 P.3d 600 (quotation simplified). "When the meaning of a statute can be discerned from its language, no other

---

informing MFRE that the engineer's memorandum was available upon request. *See supra* note 4. Although section 505 directs that the disclosure materials be provided at least 14 days prior to the public meeting (which timeline the March Letter did satisfy), *see* Utah Code Ann. § 78B-6-505(2)(b) (LexisNexis Supp. 2025), MFRE's reliance on this provision is misplaced. It is subsection 504(4) rather than section 505 that governs the specific notice requirements a political subdivision must give regarding the public meeting. Subsection 504(4) directs that the notice must be mailed "at least 10 business days before the public meeting." *Id.* § 78B-6-504(4)(b)(ii). And here, the City mailed the March Letter at least 10 business days prior to the public meeting. Indeed, the purpose of the March Letter appears to have been to comply with subsection 504(4)'s notice requirements, and the inclusion of the Ombudsman's Materials appears to have been made out of an abundance of caution.

Lastly, as for the additional sentence regarding the engineer's memorandum being available upon request, that information is not a disclosure required under section 505. *See id.* § 78B-6-505(2)(b)(i)–(ii).

interpretive tools are needed." *Brindley v. Logan City*, 2023 UT App 46, ¶ 22, 530 P.3d 557 (quotation simplified).

¶15    Subsection 505(3) directs that "the entity involved in the acquisition of property may not bring a legal action to acquire the property under this chapter until 30 days after the day on which the disclosure and materials required in *Subsections (2)(b)(ii) and (iii)* are provided to the fee simple owner and each claimant." Utah Code Ann. § 78B-6-505(3) (emphasis added). Thus, as concerns fee simple owners, the 30-day waiting period applies only to subsection 505(2)(b)(ii)'s written statement informing fee simple owners of certain rights and remedies—not the Ombudsman's Materials, which are required to be provided pursuant to subsection 505(2)(b)(i). The sole timing requirement governing the Ombudsman's Materials is the 14-day window preceding the public meeting at which the vote to initiate eminent domain proceedings takes place. *See id.* § 78B-6-505(2)(b).

¶16    Here, the February Letter and the March Letter included only the Ombudsman's Materials, which the City was required to provide pursuant to subsection 505(2)(b)(i). Neither letter included the subsection 505(2)(b)(ii) statement. The subsection 505(2)(b)(ii) statement, which was the only disclosure subject to the 30-day waiting period, was provided to MFRE in the November Letter—well over 30 days prior to the filing of the present action. And as for the Ombudsman's Materials, even the March Letter satisfied the applicable 14-day waiting period.

¶17    Further, nothing in section 505 suggests that the Ombudsman's Materials and the subsection 505(2)(b)(ii) statement must be provided simultaneously—a point MFRE has not contested on appeal. In fact, while both sets of disclosures are subject to a 14-day waiting period under subsection 505(2)(b), subsection 505(3)'s additional 30-day requirement applies only to

the subsection 505(2)(b)(ii) statement, thereby contemplating that the materials may be sent separately.[9]

¶18   For these reasons, the City complied with all of the timing requirements of section 505. Accordingly, the district court did not err in its conclusion.

## II. Notice and Hearing Requirements

¶19   Utah Code section 78B-6-504 directs that "[p]roperty may not be taken by a political subdivision of the state unless the governing body of the political subdivision approves the taking." Utah Code Ann. § 78B-6-504(3) (LexisNexis Supp. 2025). It further imposes notice and hearing requirements regarding the political subdivision's vote:

> Before taking a final vote to approve the filing of an eminent domain action, the governing body of each political subdivision intending to take property shall provide written notice to each owner of property to be taken of each public meeting of the political subdivision's governing body at which a vote on the proposed taking is expected to occur and allow the property owner the opportunity to be heard on the proposed taking.

---

9. While the Ombudsman's Materials include a recitation of rights, some of which overlap with the subsection 505(2)(b)(ii) statement, MFRE has not addressed whether this overlap is "substantial" enough to satisfy both subsections simultaneously. *See* Utah Code Ann. § 78B-6-505(2)(b)(ii) (requiring a statement "in substantially the following form"). Because MFRE has not briefed whether the initial materials fulfilled these requirements, we do not reach its argument that the March Letter reset subsection 505(3)'s 30-day waiting period.

*Id.* § 78B-6-504(4)(a). A political subdivision must strictly comply with these notice and hearing requirements. *Salt Lake City Corp. v. Kunz*, 2020 UT App 139, ¶ 34, 476 P.3d 989. The notice requirement "is satisfied by the governing body mailing the written notice" to the property owner's address shown on county records "at least 10 business days before the public meeting." Utah Code Ann. § 78B-6-504(4)(b)(i)–(ii).

¶20    In the March Letter, the City informed MFRE of the April 9, 2024 public meeting at which the Council would vote on the Resolution and of MFRE's corresponding "right to attend the City Council's public meeting and to be heard by the Council on the proposed condemnation action." MFRE does not contend that the March Letter itself was deficient, nor does it dispute that the March Letter was mailed at least 10 business days in advance of the public meeting. Rather, it argues that "the notice failed to meet the requirements of the statute because the Agenda explicitly indicated that MFRE might not have the opportunity to discuss or comment on the matter." MFRE asserts that the Agenda, which mistakenly had the Resolution categorized as a Consent Item, "could mislead a reasonable landowner into believing it likely could not speak at the relevant hearing in violation of" subsection 504(4)(a).[10] We disagree.

¶21    As an initial matter, the City strictly complied with both the notice and hearing requirements of subsection 504(4)(a). Subsection 504(4)(b) expressly states that the notice requirement is "satisfied" so long as notice of the public meeting is mailed to the owner's address of record no fewer than 10 business days prior to the public meeting. It is uncontested that this occurred here. As for the hearing requirement, when it came time to discuss the Resolution at the public meeting, MFRE was invited to speak;

---

10. MFRE's argument on appeal focuses on whether the City strictly complied with the statutory notice and hearing requirements; it does not raise a due process challenge.

when MFRE did not answer, the Council nonetheless entered into the record and discussed the letter MFRE's attorney had submitted prior to the meeting. This certainly constituted an "opportunity to be heard on the proposed taking." *Id.* § 78B-6-504(4)(a).

¶22 We also disagree with MFRE's contention that a reasonable person could have misconstrued the Agenda to suggest that the property owner would not, in fact, be given an opportunity to be heard at the public meeting. Regardless of what was stated in the Agenda, which was issued to the general public, MFRE was specifically sent the March Letter which, again, informed it, with our emphasis, that it had "*the right* . . . to be heard by the Council on the proposed condemnation action." Reasonable persons would credit the March Letter specifically directed to them over any suggestion in the Agenda posted at city hall that the property owner might not be given an opportunity to be heard. And as discussed during oral argument before this court, a property owner who was confused on that point would reasonably be expected to show up at the hearing, letter in hand, and request the opportunity to be heard if no such invitation was made, although the opportunity was in fact offered in this case.

¶23 Moreover, although the Resolution was miscategorized as a Consent Item on the Agenda, meaning it was subject to approval "without discussion or public comment," the Agenda further indicated that the Council "may remove an item to the Business Items for discussion and consideration." And although Business Items were generally exempt from public comment, they remained subject to the Council's discussion. Property owners receiving the March Letter could reasonably expect that, pursuant to their statutory right to be heard, the Council would move the Resolution to the Business Items category and invite them to speak, as happened here. This holds true regardless of whether the general public was permitted to comment on such items. And as a last resort, MFRE could have addressed the Council during

the Public Input portion of the meeting, which set aside time "for the public to express ideas, concerns, and comments for subject matter not listed as a public hearing on" the Agenda.

¶24    For these reasons, we conclude that the City strictly complied with subsection 504(4)(a)'s notice and hearing requirements.

## CONCLUSION

¶25    The City timely provided MFRE with the statutorily required disclosure materials, and it satisfied the statutory notice and hearing requirements. Thus, the district court correctly denied MFRE's motion to dismiss the City's eminent domain action.

¶26    Affirmed.

———————